# EXHIBIT 1

Kevin Abramowicz, Bar No. 320659
Kevin Tucker, Bar No. 312144
EAST END TRIAL GROUP LLC
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
T. (412) 223-5740
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com

*Counsel for Plaintiff and the Putative Class*



*Filed and Attested by the Office of Judicial Records 03 JUN 2022 11:25 am S. RICE*

| | |
|---|---|
| TAJAE BRADLEY, individually and as a representative of the Class,<br><br>　　　　Plaintiff,<br><br>v.<br><br>CARVANA, LLC,<br><br>　　　　Defendant. | PHILADELPHIA COUNTY COURT OF COMMON PLEAS TRIAL DIVISION<br><br>CLASS ACTION<br><br>Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT – CLASS ACTION

**NOTICE**

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after the complaint and notice are served by entering a written appearance personally or by attorney, and by filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
1101 Market Street, 11th Floor
Philadelphia, Pennsylvania 19107
(215) 238-1701

**AVISO**

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogao y entregar a la corte en forma escrita sus defenses o sus objecoines a las demandas en contra de su persona. Sea avisado que si usted no se defiende la corte tomara medidas y puede continuar la demandaen contra suya sin previo aviso o notificacion. Ademas la corte puede decidira favor del demandante y require que usted cumplacon todas las provisiones de esta demanda. Usted puede perder dinero or sus propriedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE SI NO TIENE ABOGADO O SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONOA LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE.

ASSOCIACION DE LICENCIADOS DE FILADELFIA
Servicio De Referencia E Informacion Legal
1101 Market Street, 11th Floor
Filadelfia, Pennsylvania 19107, (215) 238-1701

Case ID: 220600355

Tajae Bradley ("Plaintiff" or "Bradley") brings this Class Action Complaint against Carvana, LLC ("Defendant" or "Carvana") on behalf of herself and the Class set forth below.

## SUMMARY OF THE ACTION

1.     This is a class action against the country's second largest used car dealership for charging illegal delivery fees to Pennsylvania consumers in violation of Pennsylvania's Consumer Credit Code, 12 Pa. C.S. § 6201 *et seq.*, ("CCC") (formerly the Motor Vehicles Sales Finance Act, 69 P.S. § 601 *et seq.* ("MVSFA")).

2.     The Commonwealth of Pennsylvania has prosecuted at least one Pennsylvania dealership for engaging in identical conduct.[1]

3.     Bradley and many other Pennsylvanians have lost money as a result of Carvana's unlawful conduct.

4.     As a result, Bradley seeks to recover damages, individually and on behalf of a Pennsylvania Class, under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201.9.2,  restitution for Carvana's unjust enrichment, attorney's fees and costs, and all other relief available under the law.

## PARTIES

5.     Bradley is a natural person over the age of eighteen.

6.     Bradley resides in Philadelphia County, Pennsylvania.

7.     Carvana is a limited liability company headquartered in Tempe, Arizona.

---

[1] Consent Agreement and Order, *Pa. Dep't of Banking & Sec. v. High Level Auto*, No. 21-0073 (Sept. 20, 2021), available at https://www.dobs.pa.gov/Documents/Enforcement%20Orders/2021/092021%20High%20Level%20Auto%20CAO_Redacted.pdf (last visited June 3, 2022) ("Order").

Case ID: 220600355

8.      Carvana is "the second largest used automotive retailer in the U.S." and "the leading e-commerce platform for buying and selling used cars."[2]

9.      Carvana has generated $25.7 billion in used car sales since launching in 2013, including $9.9 billion in 2021.[3]

10.     Carvana is licensed under the CCC as an installment seller.

## JURISDICTION AND VENUE

11.     The Court has subject matter jurisdiction under 42 Pa. C.S. § 931.

12.     The Court has personal jurisdiction over Defendant under 42 Pa. C.S. § 5301.

13.     Venue is proper under Pa. R. Civ. P. 2179 because Defendant regularly conducts business in Philadelphia County and because Plaintiff is a resident of Philadelphia County.

## BACKGROUND

14.     "[Carvana] sell[s] used vehicles directly to [its] customers through [its] website."[4]

15.     Since 2013, Carvana "purchased, reconditioned, sold, and delivered approximately 1 million vehicles to customers through [its] website[.]"[5]

16.     In addition to the revenue earned from used car sales, Carvana's "revenues include commissions on vehicle service contracts ("VSCs"), gains on the sales of finance receivables, GAP waiver coverage, interest income received on finance receivables prior to selling them to investors

---

[2]  Carvana Co, Annual Report (Form 10-K), at 6, 2 (Feb 24, 2022), *available at*, https://otp.tools.investis.com/clients/us/carvana/SEC/sec-show.aspx?Type=html&FilingId=15600155&CIK=0001690820&Index=10000 (last visited June 3, 2022) ("2022 Form 10-K").

[3]  2022 Form 10-K, at 54, 2.

[4]  2022 Form 10-K at 68, 84.

[5]  2022 Form 10-K at 2.

2

Case ID: 220600355

and delivery fee revenues charged to customers taking delivery of purchased used vehicles outside the Company's free delivery area."[6]

17.     As of December 31, 2021, Carvana's "distribution network services cover 81.0% of the U.S. population."[7]

## APPLICABLE LAW

18.     Carvana is subject to the CCC because it is licensed as an installment seller.

19.     Such licensees "may directly or indirectly charge, contract for, collect or receive from the buyer, in connection with the retail sale of a motor vehicle under an installment sale contract, insurance charges, other charges necessary or incidental to the sale of the motor vehicle, finance charges, refinance charges, late charges, recording and satisfaction fees, court costs, attorney fees and costs of retaking, repairing and storing a repossessed motor vehicle." 12 Pa. C.S. § 6233(a).

20.     Delivery fees do not qualify as permitted charges under Section 6233(a).

21.     For example, delivery fees do not qualify as insurance charges, finance charges, refinance charges, late charges, recording and satisfaction fees, court costs, or attorney fees and costs of retaking, repairing, or storing a repossessed motor vehicle. *See generally* 12 Pa. C.S. §§ 6241, 6243, 6244, 6245, 6256, 6261.

22.     Delivery fees also fail to qualify as other charges necessary or incidental to the sale of a motor vehicle. *See generally* 12 Pa. C.S. § 6242.

---

[6] Carvana Co, Prospectus filed pursuant to Rule 424(b)(4), at F-13 (Apr. 25, 2018), *available at*, https://otp.tools.investis.com/clients/us/carvana/SEC/sec-show.aspx?Type=html&FilingId=12710406&CIK=0001690820&Index=10000 (last visited June 3, 2022).

[7] 2022 Form 10-K at 2.

Case ID: 220600355

23.     These types of charges include fees paid to the government or government officials, fees paid to notaries, licensing fees, and other fees that are related to requirements imposed by the government as a condition on the sale of a motor vehicle. *Id.*

24.     Since delivery fees are not permitted under Section 6233(a) of the CCC, such fees are prohibited under Section 6233(b) and, therefore, are unlawful. *See* 12 Pa. C.S. § 6233(b) ("A licensee may not directly or indirectly charge, contract for, collect or receive from the buyer, in connection with the retail sale of a motor vehicle under an installment sale contract, any further or other amount for costs, charges, examination, appraisal, service, brokerage, commission, expense, interest, discount, fees, fines, penalties or other thing of value in excess of the amounts permitted under [Section 6233(a).]")

25.     Recently, the Commonwealth of Pennsylvania entered into a Consent Agreement and Order ("Order") with a car dealership based in Homestead, Pennsylvania.

26.     The Order provides "[t]here is no authorization in the CCC for a licensee to charge a delivery fee" on the sale of a motor vehicle.[8]

27.     The Order provides that the dealership "violated section 6233(b) of the CCC in that [the dealership] charged delivery fees on contracts" for motor vehicles.[9]

28.     The Order requires the dealership to "refund the delivery fee to all consumers who were charged a delivery fee."[10]

29.     In addition to these refunds, the Order assesses a fine against the dealership for, in part, charging illegal delivery fees to buyers of motor vehicles.[11]

---

[8] Order at ¶ 6.

[9] Order at ¶ 7.

[10] Order at ¶ 12.

[11] Order at ¶ 21.

4

Case ID: 220600355

**FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

30.     On or about April 22, 2021, Carvana sold Bradley a used 2014 Kia Sportage with an odometer reading of more than 90,000 miles (the "Vehicle").

31.     Bradley purchased the Vehicle primarily for personal, family, and/or household purposes.

32.     Bradley and Carvana executed a written Retail Installment Contract and Security Agreement ("RISC") (attached hereto as Exhibit A) with the following material terms:

(a)     The RISC "is governed by the law of Pennsylvania and applicable federal law and regulations."

(b)     The "total" cash price for the 2014 Kia with more than 90,000 miles was $16,137.80.

(c)     In addition to the "total" cash price, the RISC required that Bradley pay Carvana a $490.00 "Transit Charge."

(d)     Altogether, including the "total" cash price, $490.00 Transit Charge, and other fees and charges, Bradley's balance for the Vehicle was $19,017.80.

33.     The RISC does not include a forced arbitration clause.

34.     Carvana delivered the Vehicle to Bradley's residence in Pennsylvania.

35.     At the time of delivery, Bradley signed various sales and delivery documents for the transaction, including a standalone document entitled "Arbitration Agreement" (attached as Exhibit B).

36.     The Arbitration Agreement is void and unenforceable under the CCC because the statute requires the RISC to contain all the agreements between a buyer and a seller relating to an installment sale of a motor vehicle. 12 Pa. C.S. § 6221(a).

Case ID: 220600355

37.     The Pennsylvania Superior Court agrees. *Knight v. Springfield Hyundai*, 81 A.3d 940, 948-49 (Pa. Super. 2013); *Zentner v. Brenner Car Credit, LLC*, No. 751 MDA 2021, 2022 Pa. Super. Unpub. LEXIS 362, at *5-12 (Pa. Super. Feb. 8, 2022); *Walker v. Metro Auto Sales, Inc.*, No. 254 EDA 2013, 2014 Pa. Super. Unpub. LEXIS 1289, at *4-7 (Pa. Super. Apr. 7, 2014); *see also Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 305 (E.D. Pa. 2016); *Mount v. Perruzi of Langhorne LLC*, No. 21-cv-2166, 2021 U.S. Dist. LEXIS 157579, at *5-6 (E.D. Pa. Aug. 20, 2021); *Guia v. World CDJR LLC*, No. 18-cv-4294, 2019 U.S. Dist. LEXIS 66271, at *11 (E.D. Pa. Apr. 17, 2019); *Earley v. JMK Assocs.*, No. 18-cv-00760, 2018 U.S. Dist. LEXIS 202916, at *2-3 (E.D. Pa. Sept. 5, 2018).

38.     The $490.00 "Transit Charge" is the delivery fee that Carvana charged Bradley for delivering the Vehicle to Bradley at her home.

39.     As described herein, the $490.00 delivery fee is illegal under Pennsylvania law.

40.     By charging and collecting the illegal delivery fee, Carvana denied Bradley the benefit of the use and retention of $490.00, plus financing, that Bradley otherwise would have had, benefited from, or held.

41.     Carvana knew or should have known that it was impermissible to charge or collect a delivery fee from Bradley.

42.     Carvana, as a matter of policy or practice, regularly charges and collects delivery fees to Pennsylvania purchasers, despite that the fact that these delivery fees are unlawful under Pennsylvania law.

43.     As a result of this conduct, Bradley and many Pennsylvanians lost money and paid more in interest and fees than they would have had Carvana acted lawfully and charged or collected the interest and fees it was permitted by law to charge and collect.

Case ID: 220600355

## CLASS ACTION ALLEGATIONS

44.     Bradley brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Rules of Civil Procedure.

45.     Bradley seeks to certify the following Class: "All persons who purchased a motor vehicle from Carvana, arranged for delivery of the motor vehicle into Pennsylvania, and, within the applicable statute of limitations, were charged an amount purporting to represent a delivery fee or "Transit Charge."

46.     Bradley reserves the right to expand, narrow, or otherwise modify the class as the litigation continues and discovery proceeds.

47.     Pa. R. Civ. P. 1702(1), 1708(a)(2): The class is so numerous that joinder of the class members is impracticable. There likely are hundreds of members of the class. Since each of the claims of the class members is substantially identical, and the class members request substantially similar relief, centralizing the class members' claims in a single proceeding is the most manageable litigation method available.

48.     Pa. R. Civ. P. 1702(2), 1708(a)(1): Bradley and the class members share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to the question of whether Carvana could charge, collect, contract for, or receive delivery fees, "Transit Charges," or similar fees. This question, and other common questions of law and fact, predominate over any individual issues.

49.     Pa. R. Civ. P. 1702(3): Bradley's claims are typical of the claims of the class because the claims of Bradley and the class are based on the same legal theories and arise from the same conduct.

Case ID: 220600355

50.     <u>Pa. R. Civ. P. 1702(4), 1709</u>: Bradley is an adequate representative of the class because the interests of Bradley and the class members align. Bradley will fairly, adequately, and vigorously represent and protect the interests of the class and has no interest antagonistic to the class. Bradley retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer finance litigation specifically.

51.     <u>Pa. R. Civ. P. 1708(a)(3), (6), (7)</u>: Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief Bradley and the class members may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Bradley and the class members. Additionally, requiring Bradley and the class members to file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

52.     <u>Pa. R. Civ. P. 1708(a)(4)</u>: Based on the knowledge of Bradley and undersigned counsel, there are no cases currently pending that address the issues or request relief for the conduct at issue in this case.

53.     <u>Pa. R. Civ. P. 1708(a)(5)</u>: This forum is appropriate for this litigation, as Defendant regularly conducts business in this County and part of the claims arose in this County.

### <u>COUNT I</u>
**Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
73 P.S. §§ 201, *et seq.* ("UTPCPL")
*On behalf of Bradley and the Class***

54.     Bradley and Carvana are "persons" under 73 Pa. Stat. § 201-2(2).

55.     Bradley and the Class purchased goods and services in "trade" and "commerce" under 73 Pa. Stat. § 201-2(3).

8

Case ID: 220600355

56.     Bradley and the Class purchased goods and services primarily for personal, family, and/or household purposes under 73 Pa. Stat. § 201-9.2.

57.     Carvana engaged in "unfair methods of competition" or "unfair or deceptive acts or practices" under 73 Pa. Stat. § 201-2(4) by engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

58.     These unfair methods of competition and unfair or deceptive acts or practices are declared unlawful by 73 Pa. Stat. § 201-3.

59.     Bradley and the Class lost money or property as a result of Carvana's unlawful conduct and, therefore, are entitled to actual damages, statutory damages, treble damages, and all other available relief under 73 P.S. § 201-9.2, as well as reasonable costs and attorneys' fees, and such additional relief the Court deems necessary and proper

**COUNT II**
**UNJUST ENRICHMENT**
***On behalf of Bradley and the Class***

60.     Bradley and the Class conferred a monetary benefit upon Carvana in the form of monies paid for delivery fees or "Transit Charges."

61.     Carvana appreciated or had knowledge of these benefits conferred.

62.     As a result of Carvana's misconduct, Bradley and the Class suffered actual damages in an amount equal to the delivery fees or "Transit Charges" they paid Carvana for the purchases of motor vehicles.

63.     Under principles of equity and good conscience, Carvana should not be permitted to retain the money belonging to Bradley and the Class.

64.     Carvana should be compelled to disgorge into a common fund for the benefit of Bradley and the Class all unlawful or inequitable proceeds received by it as a result of the misconduct described herein.

9

Case ID: 220600355

## **JURY TRIAL DEMANDED**

Bradley requests a jury trial on all claims so triable.

## **PRAYER FOR RELIEF**

WHEREFORE, Bradley, on behalf of all others similarly situated, requests that the Court enter judgment against Carvana including an order:

A.      Determining that this matter may proceed as a class action and certifying the Class asserted herein;

B.      Appointing Bradley as representative of the Class and appointing Bradley's counsel as class counsel;

C.      Declaring Carvana's conduct unlawful;

D.      Awarding Bradley and the Class members actual, compensatory, consequential, statutory, treble, and all other damages available under the law;

E.      Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

F.      Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

G.      Awarding all other relief that is just, equitable, and appropriate, or as the Court may allow.

10

Case ID: 220600355

Respectfully submitted,

Dated: June 3, 2022

*/s/ Kevin J. Abramowicz*

Kevin J. Abramowicz (He/Him) (PA 320659)
Kevin W. Tucker (He/Him) (PA 312144)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
⬤ in 🐦 📷
Tel. (412) 877-5220
Fax. (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

Case ID: 220600355

## <u>VERIFICATION</u>

I, Tajae Bradley, am fully familiar with the facts set forth in this complaint and believe them to be true and correct to the best of my knowledge, information, and belief. I understand any false statements herein are made subject to the penalties of 18 Pa. C.S § 4904, relating to unsworn falsification to authorities.

Respectfully Submitted,

Dated: June 3, 2022

By: _/s/ Tajae Bradley_____
Tajae Bradley

Case ID: 220600355

# EXHIBIT A

Case ID: 220600355

THIS IS A COPY
of the Authoritative Copy held
by the designated custodian

PA-102 10/10/2015

# Retail Installment Contract and Security Agreement

| Seller Name and Address | Buyer(s) Name(s) and Address(es) | Summary |
|---|---|---|
| CARVANA, LLC | Tajae Kimani Bradley | No. |
| 600 CREEK ROAD | | Date 04/22/2021 |
| DELANCO NJ 08075-5210 | | |

☐ Business, commercial or agricultural purpose Contract.

## Truth-In-Lending Disclosure

| Annual Percentage Rate The cost of your credit as a yearly rate. | Finance Charge The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid when you have made all scheduled payments. | Total Sale Price The total cost of your purchase on credit, including your down payment of $ 600.00 |
|---|---|---|---|---|
| 7.299 % | $ 4,520.81 | $ 19,017.80 | $ 23,538.61 | $ 24,138.61 |

Payment Schedule. Your payment schedule is:

| No. of Payments | Amount of Payments | When Payments are Due |
|---|---|---|
| 71 | $ 327.00 | monthly beginning 05/21/21 |
| 1 | $ 321.61 | 04/21/27 |
| N/A | $ N/A | N/A |

Security. You are giving us a security interest in the Property purchased.

Late Charge. If all or any portion of a payment is not received in full within 10 days after it is due, you will pay a late charge. The charge will be 2% of the part of the payment that is late. If the Vehicle is a heavy commercial motor vehicle, the charge will be 4% of the part of the payment that is late.

Prepayment. If you pay off this Contract early, you will not have to pay a penalty.

Contract Provisions. You can see the terms of this Contract for any additional information about nonpayment, breaking the terms of this Contract, any required repayment before the scheduled date, and prepayment refunds and penalties.

Buyer Restrictions. If you do not meet this Contract's obligations, you may lose the property that you bought in this sale.

## Description of Property

| Year | Make | Model | Style | Vehicle Identification Number | Odometer Mileage |
|---|---|---|---|---|---|
| 2014 | Kia | Sportage | Sport Utility | | 90658 |

☐ New
☒ Used
☐ Demo

Other:

N/A

## Description of Trade-In

N/A  N/A  N/A

N/A

N/A  N/A  N/A

N/A

## Sales Agreement

Payment. You promise to pay us the Amount Financed and Finance Charge according to the payment schedule as provided in the Truth-in-Lending Disclosure above. The Finance Charge is figured at the Annual Percentage Rate on the unpaid part of the Amount Financed until paid in full. Finance Charges accrue on a daily basis. Each payment will be applied, in any order that we determine, to earned and unpaid Finance Charges, to the unpaid part of the Amount Financed, and to other charges and amounts you owe under this Contract. You agree to pay late charges as provided in the Truth-in-Lending Disclosure. You also agree to pay any additional amounts according to this Contract's terms.

## Conditional Delivery

☐ Conditional Delivery. If checked, you agree that the following agreement regarding securing financing ("Agreement") applies: _____ N/A _____

_____ N/A _____ . The Agreement is part of this Contract. The Agreement will no longer control after the assignment is accepted. If there are any conflicts between the terms of the Agreement and the Contract, the terms of this Contract will apply.

You understand and agree that some payments to third parties as a part of this Contract may involve money retained by us or paid back to us as commissions or other remuneration.

Down Payment. You also agree to pay or apply to the Total Cash Price, on or before the date of this Contract, any cash, rebate and net trade-in value described in the Itemization of Amount Financed.

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

TB

RSSIMVLFLZPA 10/10/2015

Case ID: 220600355

DocuSign Envelope ID: 1B3C23B7-B89D-4E06-94B7-8B89B33DC0B9

THIS IS A COPY

Case 2:22-cv-02525-MMB   Document 1-1   Filed 06/28/22   Page 17 of 33 of the Authoritative Copy h
by the designated custodian

## Itemization of Amount Financed

| | | | |
|---|---|---|---|
| 1a. | Cash price of motor vehicle | $ | 14,590.00 |
| 1b. | Government taxes | $ | 1,057.80 |
| 1c. | Accessories and installation | $ | 0.00 |
| 1d. | Delivery charge | $ | N/A |
| 1e. | _____ N/A _____ | $ | N/A |
| 1f. | _____ N/A _____ | $ | N/A |
| 1g. | _____ N/A _____ | $ | N/A |
| 1h. | _____ N/A _____ | $ | N/A |
| 1. | **Total Cash Price of Motor Vehicle** (1a thru 1h) | $ | 16,137.80 |
| 2a. | Trade-in allowance | $ | 0.00 |
| 2b. | Less: Amount owing paid to: _____ N/A _____ | $ | 0.00 |
| 2c. | **Net Trade-In** (2a minus 2b) | $ | 0.00 |
| 2d. | Plus cash payment | $ | 600.00 |
| 2e. | Plus manufacturer's rebate | $ | 0.00 |
| 2f. | Plus (Other) _____ N/A _____ | $ | N/A |
| 2. | **Total Down Payment** (if negative, enter $0 and see 4a.) | $ | 600.00 |
| 3. | **Unpaid Cash Price Balance** (1 minus 2) | $ | 15,537.80 |
| 4a. | Prior credit or lease balance payment on Trade-in (paid to same as 2b.) | $ | 0.00 |
| 4b. | Insurance premiums paid to insurance company(ies) | $ | 0.00 |
| 4c. | Paid to Public Officials (incl. filing fees) | $ | 135.00 |
| 4d. | (Optional) Service Contract paid to: SilverRock | $ | 2,025.00 |
| 4e. | (Optional) Service Contract paid to: _____ N/A _____ | $ | 0.00 |
| 4f. | Optional Gap Waiver (Debt Cancellation) paid to Seller | $ | 795.00 |
| 4g. | Transit Charge pd to Carvana | $ | 490.00 |
| 4h. | Cosmetic Protection pd to Assurant | $ | 525.00 |
| 4i. | Prepaid Maintenance pd to Carvana | $ | 0.00 |
| 4j. | N/A pd to N/A | $ | N/A |
| 4k. | N/A pd to N/A | $ | N/A |
| 4l. | N/A pd to N/A | $ | N/A |
| 4m. | N/A pd to N/A | $ | N/A |
| 4n. | N/A pd to N/A | $ | N/A |
| 4o. | N/A pd to N/A | $ | N/A |
| 4p. | N/A pd to N/A | $ | N/A |
| 4. | **Total Other Charges and Amounts Paid to Others on Your Behalf** (4a thru 4p) | $ | 3,970.00 |
| 5. | **Amount Financed** (3+4) | $ | 19,017.80 |
| 6. | **Finance Charge** | $ | 4,520.81 |
| 7. | **Time Balance** (5+6) | $ | 23,538.61 |

**We may retain or receive a portion of any amount paid to others.**

[This area intentionally left blank.]

## Insurance Disclosures

**Credit Insurance.** Credit life insurance and credit disability insurance are not required to obtain credit and are not a factor in the credit decision. In general, if you die, credit life insurance pays the unpaid part of the amount financed, assuming you made all payments on time. In general, credit disability insurance pays the scheduled payments due under this Contract while you are disabled. This insurance does not cover any increase in your payment or in the number of payments. The policies or certificates issued by the named insurance companies may further limit the coverage that credit life or credit disability insurance provides. You will not receive credit life insurance and credit disability insurance unless you sign and agree to pay the additional premium. If you want such insurance, we will select it for you (if you qualify for coverage). We are quoting below only the coverages you have chosen to purchase.

**Credit Life**

☐ Single   ☐ Joint   ☐ None

Premium $ _____ N/A _____   Term _____ N/A _____

Insured _____ N/A _____

**Credit Disability**

☐ Single   ☐ Joint   ☐ None

Premium $ _____ N/A _____   Term _____ N/A _____

Insured _____ N/A _____

You want the credit insurance coverages indicated.

By: _____ N/A _____   _____ N/A _____ DOB

By: _____ N/A _____   _____ N/A _____ DOB

By: _____ N/A _____   _____ N/A _____ DOB

**Property Insurance.** In general, property insurance pays for the repair or replacement of the Property if it is damaged, destroyed, or stolen. See the policies or certificates for coverage limits and other terms and conditions. You must insure the Property securing this Contract. You may provide the insurance through existing policies. You may also provide the insurance by purchasing it through any insurance company allowed by law to do business in Pennsylvania or in the state in which the Vehicle is registered and titled. The deductible amount for the insurance may not exceed $ _____ 1,000.00 _____ . If you get insurance from or through us you will pay $ _____ N/A _____ for _____ N/A _____ of coverage.

This property insurance premium is calculated as follows:

| | | | |
|---|---|---|---|
| ☐ $ N/A Deductible, Collision Cov. | $ | N/A |
| ☐ $ N/A Deductible, Comprehensive | $ | N/A |
| ☐ Fire-Theft and Combined Additional Cov. | $ | N/A |
| ☐ N/A | $ | N/A |

Liability insurance coverage for bodily injury and motor vehicle damage caused to others is not included in this Contract unless checked and indicated.

The property insurance must protect against loss and physical damage. You must name us as beneficiary on the insurance policy. We may require additional security before we allow you to use insurance proceeds to repair or replace the Property. You will pay all amounts that insurance does not cover.

If you fail to obtain or keep insurance or to name us as beneficiary, we may obtain insurance to protect your interest and our interest in the Property. We will add the cost of insurance to the amount you owe us. Any amount we pay for insurance is due immediately. This amount will earn finance charges from the date paid at the rate described in the *Payment* section until paid in full.

Retail Installment Contract-PA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

RSSIMVLFLZPA 10/10/2015

TB

Case ID: 220600355

THIS IS A COPY
the Authoritative Copy h
by the designated custodian

## Additional Protections

You may buy any of the following voluntary protection plans. They are not required to obtain credit, are not a factor in the credit decision, and are not a factor in the terms of the credit or the related sale of the Vehicle. The voluntary protections will not be provided unless you sign and agree to pay the additional cost.

Your signature below means that you want the described item and that you have received and reviewed a copy of the contract(s) for the product(s). If no coverage or charge is given for an item, you have declined any such coverage we offered.

☒ **Service Contract**

| Term | 36 months |
|---|---|
| Price | $ 2,025.00 |
| Coverage | Service Contract, paid to SilverRock |

☒ **Optional Gap Waiver (Debt Cancellation)**

| Term | 72 months |
|---|---|
| Price | $ 795.00 |
| Coverage | Gap Coverage |

☒ **Cosmetic Protection**

| Term | 36 months |
|---|---|
| Price | $ 525.00 |
| Coverage | Cosmetic Protection, paid to Assurant |

*Tajae Bradley*                              04/22/202[]
**By: Tajae Kimani Bradley**                    Date

N/A                                    N/A
**By:**                                   **Date**

N/A                                    N/A
**By:**                                   **Date**

## Additional Terms of the Sales Agreement

**Definitions.** *"Contract"* refers to this Retail Installment Contract and Security Agreement. The pronouns *"you"* and *"your"* refer to each Buyer signing this Contract, and any guarantors, jointly and individually. The pronouns *"we"*, *"us"* and *"our"* refer to the Seller and any entity to which it may transfer this Contract. *"Vehicle"* means each motor vehicle described in the *Description of Property* section. *"Property"* means the Vehicle and all other property described in the *Description of Property* and *Additional Protections* sections. *"Heavy commercial motor vehicle"* means a new or used motor vehicle (other than a recreational vehicle) that is a truck or truck tractor having a manufacturer's gross vehicular weight of 13,000 pounds or more, or a semitrailer or trailer designed for use in combination with a truck or truck tractor.

**Purchase of Property.** You agree to purchase the motor vehicle (Vehicle) and services described in the Description of Property section from Seller. You also agree that the purchase of the Property on credit takes place at the Seller's licensed location identified at the top of page 1 of this Contract. You agree to purchase the Vehicle from us on the terms of this Contract and security agreement (Contract). You understand that we are selling you the Vehicle in its present condition.

**Total Sale Price.** We gave you the opportunity to purchase the Vehicle and described services for the Total Cash Price or the **Total Sale Price**. The **Total Sale Price** is the total price of the Vehicle and any services if you buy them over a period of time. You are purchasing the items over a period of time.

The **Total Sale Price** shown in the **Truth-in-Lending Disclosure** assumes that you will make all payments as scheduled. The actual amount you will pay will be more if you pay late and less if you pay early. This may cause your final payment to be more or less than

the scheduled amount, or, at our option, we may require more or fewer payments of the scheduled amount with an adjusted final payment.

We charge and collect finance charges. These charges are not more than state or federal law allows. If you pay a finance charge or fee that is more than state or federal law allows, we will apply the charge or fee first to reduce what you owe and refund any excess to you.

You agree that the Property will not be used as a dwelling.

**Prepayment.** You may prepay this Contract in full or in part at any time without penalty. Any partial prepayment will not excuse any later scheduled payments. If we get a refund of any unearned insurance premiums that you paid, you agree that we may subtract the refund from the amount you owe, unless otherwise provided by law.

**Governing Law and Interpretation.** This Contract is governed by the law of Pennsylvania and applicable federal law and regulations.

If any section or provision of this Contract is not enforceable, the other terms will remain part of this Contract. You authorize us to correct any clerical error or omissions in this Contract or in any related document.

Any provision that appoints us as an agent is not subject to the provisions of 20 Pa.C.S.A. Section 5601 *et seq.* (Chapter 56; Decedents, Estates and Fiduciaries Code). We, by exercising any of our rights under this Contract, do so for the sole benefit of us.

**Name and Location.** Your name and address set forth in this Contract are your exact legal name and your principal residence. You will provide us with at least 30 days notice before you change your name or principal residence.

**Telephone Monitoring and Calling.** You agree that we may from time to time monitor and record telephone calls made or received by us or our agents regarding your account to assure the quality of our service. In order for us to service the account or to collect any amounts you may owe, and subject to applicable law, you agree that we may from time to time make calls and send text messages to you using prerecorded/artificial voice messages or through the use of an automatic dialing device at any telephone number you provide to us in connection with your account, including a mobile telephone number that could result in charges to you.

**Breaking the Terms of this Contract.** You agree that the following are additional terms of this Contract. You will have broken the terms of this Contract if you fail to perform any obligation that you have undertaken in this Contract, except as prohibited by law.

If you break any of the terms of this Contract, you agree to pay our costs for collecting amounts owing, including court costs and fees for repossession, repair, storage and sale of the Property securing this Contract. In addition, you agree to pay reasonable attorneys' fees to the extent permitted by law if the Property is taken through legal action.

If there is more than one of you and any one of you breaks any agreement made in this Contract, we may exercise our rights against each of you or all of you.

**Seller's Rights.** If you break any of the terms of this Contract, we have all of the remedies provided by law and this Contract, subject to any opportunity to cure we may offer and you may exercise. Those remedies include:

◆ We may pay taxes, fees, expenses, or charges on the Property or make repairs to the Property if you have not done so. We are not required to do so. We will add any amount we pay to the amount you owe us, as allowed by law. This amount is due immediately. This amount will earn finance charges from the date we paid it at the rate described in the *Payment* section until paid in full.

◆ We may require you to make the Property available to us at a place we designate that is reasonably convenient to you and us.

◆ We may immediately take back the Property by lawful means. In taking the Property, we may not unlawfully enter onto your premises or cause a public disturbance.

◆ We may sell the Property. We may apply amounts we receive as provided by law to our reasonable expenses and then to your obligations.

◆ Except when prohibited by law, we may sue you for additional amounts if the proceeds of a sale do not pay all of the amounts you owe us.

We may take any or all of the actions described above. Our decision not to take any of the actions does not mean that we have lost the right to take any of the actions in the future.

In addition, we may require you to pay us immediately, the remaining balance of the amount financed, finance charges and other agreed charges if you do any of the following:

◆ You fail to pay one or more installment payments under this Contract.

◆ You fail to pay taxes levied against the Property.

◆ You fail to furnish proof of payment of taxes levied against the Property.

Retail Installment Contract-PA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

*TB*

RSSIMVLFLZPA 10/10/2015

Case ID: 220000355

- You use the Property for illegal purposes.
- You file for bankruptcy.
- You intentionally provide fraudulent and misleading information on a credit application.

We will mail to your last known address any required notice of intended sale or transfer of the Property. You agree that notice is reasonable if mailed to your last known address, as reflected in our records. You agree that notice mailed 15 days before the intended sale or transfer (or such other period of time required by law) is reasonable.

You agree that we may take personal property left in or on the Property subject to your right to recover the personal property.

If the Property has an electronic tracking device, you agree that we may use the device to find the vehicle.

**Buyer's Rights and Duties.** If we have taken back the Property, we may, at our option, return the Property to you if you pay all past due installments, late charges and our costs in retaking the Property, to the extent allowed by law. Your opportunity to get back the Property ends when we sell the Property.

You agree to pay for the costs of a lawsuit allowed by law if we take the Property through legal action. If we retake the Property other than through a lawsuit, you must pay the expenses for taking, repairing, and storing the Property as allowed by law. We may only collect these expenses from you if more than 15 days passed from the day you broke the terms of this Contract to the day we took the Property.

**Statement of Account.** At your request, we will provide you with a statement of your account showing information about your payment history, including the dates and amounts of payments you have made and other credits and charges to your account. It will also provide information about future payments and any other information required by law. We will provide you with one statement of account free of charge. We may charge you a reasonable fee as allowed by law for any additional statements that you request. You can request, and we will provide, a statement of account at any time until one year after this Contract ends.

**Each and Every Buyer Responsible.** Each of you who signs this Contract agrees to pay this Contract according to its terms. This means the following:

- You are responsible for paying amounts owed under this Contract even if another of you has signed this Contract.
- We may hold any of you responsible for paying this Contract, even if we choose to give up our right to hold any other of you responsible.
- We may give up our interest in the Property and each of you is still responsible for paying this Contract.
- If we give up any of our rights, it will not affect your responsibility to pay this Contract.
- If we extend new credit or renew this Contract, it will not affect your responsibility to pay this Contract.

**Warranty.** Warranty information is provided to you separately.

**Additional Rights.** If you encounter a problem, you may have additional rights under the Unfair Trade Practices and Consumer Protection Law, which is enforced by the Pennsylvania Office of Attorney General, Bureau of Consumer Protection.

### Security Agreement

**Security.** You give us, to secure a security interest in the Vehicle. You also give us a security interest in all attachments, accessories, and equipment installed or placed in or on the Vehicle. We refer to the Vehicle and any items installed or placed in or on the Vehicle as Property. You also give us a security interest in the proceeds of the Property. Our interest will not extend to consumer goods unless you acquire rights to the goods within 10 days after we enter into this Contract or the goods are installed in or affixed to the Vehicle. You assign and give a security interest in proceeds and premium refunds of any insurance and service contracts purchased with this Contract.

**Buyer's Responsibilities Towards Property.** You agree to the following:

- You will defend our security interest in the Property against anyone who claims to have an interest in the Property. You will do whatever is necessary to keep our claim to the Property ahead of the claim of anyone else. Our claim to the Property comes ahead of the claim of any of your other creditors. You agree to sign any additional documents to provide us with any additional information we may require to protect our security interest in the Property.
- You will keep the Property in your possession and in good condition. You will only use the Property for its intended and lawful purposes.
- You agree not to remove the Property from the U.S. without our prior written consent.
- You will not put the Property up for sale without written permission from us. You will not transfer any rights in the Property without first getting our written permission.
- You will pay taxes, fees and expenses on the Property when due.
- You will notify us of any loss or damage to the Property.
- You will provide us reasonable access to the Property for the purpose of inspection. We may lawfully enter and inspect the Property.

**Insurance.** You agree to buy insurance on the Property against risks and for the amounts we reasonably require. In addition:

- You will name us as loss payee on any such policy.
- We may require added security on this Contract if we permit any insurance proceeds to be used to repair or replace the Property.
- If the insurance proceeds do not cover the amounts you still owe us, you will pay the difference.
- You will keep this insurance until all debts secured by this Contract are paid.

If you do not buy, maintain, and arrange to have us named as loss payee, as agreed above, you understand and agree:

- We may purchase insurance to protect your and our interest in the Property.
- The insurance we buy may be from an agent or company you may not choose.
- The insurance will not cover your equity in the Property.
- The premium we pay may be substantially higher than the premium you might be required to pay for the insurance you have agreed to buy on this Contract.

**Optional Gap Waiver (Debt Cancellation).** In the event of theft or damage to the Vehicle that results in a total loss, there may be a gap between the amount due under the terms of the Contract and the proceeds of your insurance settlement and deductibles. You are liable for this difference. You have the option of purchasing Optional Gap Waiver (Debt Cancellation) to cover the gap liability, subject to any conditions and exclusions in the Optional Gap Waiver (Debt Cancellation) agreements.

### Notices

**NOTICE. ANY HOLDER OF THIS CONSUMER CREDIT CONTRACT IS SUBJECT TO ALL CLAIMS AND DEFENSES WHICH THE DEBTOR COULD ASSERT AGAINST THE SELLER OF GOODS OR SERVICES OBTAINED PURSUANT HERETO OR WITH THE PROCEEDS HEREOF. RECOVERY HEREUNDER BY THE DEBTOR SHALL NOT EXCEED AMOUNTS PAID BY THE DEBTOR HEREUNDER.**

If you are buying a used vehicle: The information you see on the window form for this vehicle is part of this contract. Information on the window form overrides any contrary provisions in the contract of sale.

Sí compra un vehículo usado: La información que ve adherida en la ventanilla forma parte de éste contrato. La información contenida en el formulario de la ventanilla prevalece por sobre toda otra disposición en contrario incluida en el contrato de compraventa.

Retail Installment Contract-PA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

TB   RSSIMVLFLZPA 10/10/2015

Case ID: 220600355

**Summary Notice - Prepayment, Rebate, Reinstatement and Statement of Account.** You may prepay all or part of the amount you owe under this Contract at any time without penalty. If you prepay, you will only pay finance charges that are earned but unpaid and all other amounts due up to the date of prepayment. Payments we receive for any unearned finance charges will be rebated to you. If you break the terms of this Contract we may take back the vehicle (Property). We may, at our option, allow you to get the Property back before we sell it and continue under this Contract (reinstate). If we allow you to reinstate this Contract, you must pay us all past due amounts, late charges and any costs we incurred in retaking the vehicle to the extent allowed by law. At your request, we will provide you with a statement of account with important information about your payment history and amounts owing.

☒ **Electronic Signature Acknowledgment.** You agree that (i) you viewed and read this entire Contract before signing it, (ii) you signed this Contract with one or more electronic signatures, (iii) you intend to enter into this Contract and your electronic signature has the same effect as your written ink signature, (iv) you received a paper copy of this Contract after it was signed, and (v) the authoritative copy of this Contract shall reside in a document management system held by Seller in the ordinary course of business. You understand that Seller may transfer this Contract to another company in the electronic form or as a paper version of that electronic form which would then become the authoritative copy. Seller or that other company may enforce this Contract in the electronic form or as a paper version of that electronic form. You may enforce the paper version of the Contract copy that you received.

### Signature Notices

*The Annual Percentage Rate may be negotiable with the Seller. The Seller may assign this Contract and retain its right to receive a part of the Finance Charge.*

You authorize us to obtain information about you and the Property you are buying from the state motor vehicle department or other motor vehicle registration authorities.

### Signatures

**Entire Agreement.** Your and our entire agreement is contained in this Contract. There are no unwritten agreements regarding this Contract. Any change to this Contract must be in writing and signed by you and us.

| | |
|---|---|
| *Tajae Bradley* | 04/22/2021 |
| **By:** Tajae Kimani Bradley | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

By signing below, you agree to the terms of this Contract.

**NOTICE TO BUYER.** Do not sign this contract in blank. You are entitled to an exact copy of the contract you sign. Keep it to protect your legal rights. Any holder of this consumer credit contract is subject to all claims and defenses which the buyer could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof. Recovery hereunder by the buyer shall not exceed amounts paid by the buyer hereunder.

**Buyer**

| | |
|---|---|
| *Tajae Bradley* | 04/22/2021 |
| **By:** Tajae Kimani Bradley | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

**Seller**

| | |
|---|---|
| *[signature]* | 04/22/2021 |
| **By:** CARVANA, LLC | Date |

By signing below, you acknowledge that you received a completely filled-in copy of this Contract and that you had the opportunity to read and review the Contract before you signed it.

**Buyer**

| | |
|---|---|
| *Tajae Bradley* | 04/22/2021 |
| **By:** Tajae Kimani Bradley | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

| | |
|---|---|
| N/A | N/A |
| **By:** | Date |

Retail Installment Contract PA
Bankers Systems ™ VMP®
Wolters Kluwer Financial Services © 2015

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

TB

RSSIMVLFLZPA 10/10/2015

Case ID: 220600355

DocuSign Envelope ID: 1B3C23B7-B89D-4E06-94B7-8B89B33DC0B9
Case 2:22-cv-02525-MMB   Document 1-1   Filed 06/28/22   Page 21 of 33

THIS IS A COPY
This is a copy view of the Authoritative Copy h
by the document custodian

**Transfer.** This Contract and Security Agreement is transferred to

N/A

the Transferee, phone _____ N/A _____ . This transfer is made under
the terms of a separate agreement made between the Seller and Transferee.

☐ This Transfer is made   ☐ with legal liability.   ☐ without legal liability.

**Seller**

N/A

**By:** _____ **Date**



Retail Installment Contract-PA
Bankers Systems TM VMP®
Wolters Kluwer Financial Services © 2015

NOT FOR USE IN TRANSACTIONS SECURED BY A DWELLING

TB   RSCMVLF 10/2020
Case ID: 220600355
Page 6 of 6

# EXHIBIT B

Case ID: 220600355

THIS IS A COPY

This document has been reproduced as the Authoritative Copy held by the designated custodian

# ARBITRATION AGREEMENT

## NOTICE OF ARBITRATION AGREEMENT

We both agree that if we have a dispute, either of us can decide to resolve it by using arbitration. Arbitration is a formal process for resolving disputes without going to court. If you want to learn more about arbitration, please navigate to the following links in your browser:

- http://info.adr.org/consumer-arbitration/
- https://www.jamsadr.com/adr-arbitration

If you wish, **you can decide to opt out and reject this arbitration agreement**, but to reject this arbitration agreement you will need to follow the instructions under the heading "Your Right to Reject this Agreement". You will need to act in the next 30 days or you lose your right to reject this arbitration agreement. It is your choice.

By choosing arbitration, we are both giving up our right to go to court (except small claims court) to resolve our dispute. In arbitration a neutral person, called an arbitrator, listens to both of us and decides how our dispute is resolved. Arbitrator decisions are enforceable, just like a court order. Unlike court orders, these decisions are subject to very limited review by a court. Once a decision is made it is final, except in very limited circumstances.

In arbitration, we both give up our right to a judge or jury, and, as a result, there is no jury trial. However, if either of us elects to use small claims court to resolve the dispute, the dispute will be resolved in small claims court rather than arbitration.

If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

Arbitration rules are generally simpler and more limited than court rules. If you want to learn more about the rules and how they work, navigate to the following link in your browser:

- https://www.adr.org/sites/default/files/Consumer_Rules_Web.pdf

- https://www.jamsadr.com/rules-streamlined-arbitration/

The Arbitration Agreement also explains what the fees and costs for the arbitration will be, and who will pay them.

This is only a summary. As with all legal agreements, please read the entire agreement carefully before you sign. **Unless you opt out of the Arbitration Agreement, it will substantially affect your rights in the event of a dispute between you and us.**

"Us/We/Our" means Carvana, any purchaser, assignee or servicer of the Contract, all of their parent companies, and all subsidiaries, affiliates, predecessors and successors, and all officers, directors and employees of any of the forgoing. "Us/We/Our" also means any third party providing any product or service in connection with or incidental to the Contract, the sale of the vehicle and/or other goods or services covered by the Contract and/or related to the vehicle, if such third party is named as a co-defendant with us in a Claim you assert. "Us/We/Our" have these meanings only for this Agreement. This Agreement is part of, and is hereby incorporated into, the Contract. However, whenever in this Agreement the term "Contract" is used, it does not include this Agreement.

"You/Your" means you and/or any of your heirs or personal representatives.

"Contract" means the Retail Purchase Agreement (in Texas, the Buyer's Order) and/or the related Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) you signed with us in connection with this purchase, and any prior Retail Purchase Agreement (in Texas, Buyer's Order) and/or Retail Installment Contract and Security Agreement (in California, Conditional Sales Contract and Security Agreement) that you previously had with us.

DocuSign Envelope ID: 1B3C23B7-B89D-4E06-94B7-8B89B33DC0B9
THIS IS A COPY
Case 2:22-cv-02525-MMB   Document 1-1   Filed 06/28/22   Page 24 of 33 the Authoritative Copy h
by the designated custodian

"Agreement" means this Arbitration Agreement.

"Including" and "includes" means "including but not limited to."

This Agreement describes how a Claim may be arbitrated instead of litigated in court.

"Claim" means any claim, dispute our controversy between you and us arising from or related to one or more of the following:

    (a) The Contract.
    (b) The vehicle or the sale of the vehicle.
    (c) The provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle.
    (d) The relationships resulting from the Contract.
    (e) Advertisements, promotions or oral or written statements related to the Contract.
    (f) The financing terms.
    (g) Your credit applications.
    (h) The origination and servicing of the Contract.
    (i) The collection of amounts you owe us.
    (j) Any repossession, or replevin, of the vehicle.
    (k) Your personal information.
    (l) The rescission or termination of the Contract.

"Claim" has the broadest reasonable meaning. It includes claims of every kind of nature. This includes initial claims, counterclaims, cross-claims, third-party claims, statutory claims, contract claims, negligence and tort claims (including claims of fraud and other intentional torts). However, notwithstanding any language in this Agreement to the contrary, a "Claim" does not include a dispute about validity, enforceability, coverage or scope of this Agreement (including, without limitation, the paragraph below captioned "No Class Actions or Private Attorney General Actions," the final sentence under the paragraph below captioned "Miscellaneous" and/or this sentence); any such dispute is for a court, and not an arbitrator to decide. This exclusion from the definition of a "Claim" does not apply to any dispute or argument that concerns the validity or enforceability of the Contract as a whole; any such dispute or argument is for the arbitrator, not a court, to decide.

Even if you and we elect to litigate a Claim in court, you or we may elect to arbitrate any other Claim, including a new Claim in that lawsuit or any other lawsuit. Nothing in that litigation waives any rights in this Agreement.

However, notwithstanding any language in this Agreement to the contrary, the term "Claim" does not include (i) any self-help remedy, such as repossession or sale of any collateral given by you to us as security for repayment of amounts owed by you under the Contract; or (ii) any individual action in court by one party that is limited to preventing the other party from using such self-help remedy and that does not involve a request for damages or monetary relief of any kind. Also, we will not require arbitration of any individual Claim you make in small claims court or your state's equivalent court, if any. If, however, you or we transfer or appeal the Claim to a different court, we reserve our right to elect arbitration.

**<u>Your Right to Reject this Agreement</u>. You have the right to reject this Agreement, in which event neither you nor we will have the right to require arbitration of any Claims. Rejection of this Agreement will not affect any other aspect of your Contract. In order for you to reject this Agreement, we must receive a notice in writing ("Rejection Notice") from you within 30 days of the day you enter into the Contract, stating that you reject the Agreement. Any notice received after 30 days from the Contract date will not be accepted. The Rejection Notice must include your name, address and Vehicle Identification Number (VIN). You may email the notice to arbitrationoptout@carvana.com or you may mail it to us at: Attn: Carvana Legal, 1930 W Rio Salado Pkwy, Tempe, AZ 85281. Emailed notices must be received by 11:59pm, Arizona time, on the 30th day from the contract date. If mailed, it must be sent via certified mail, return receipt requested. Upon receipt of your Rejection Notice, we will refund your postage cost up to $6.70. We will not refund postage cost for late notices. If the Rejection Notice is sent on your behalf by a third party, such third party must include evidence of his or her authority to submit the Rejection Notice on your behalf. If you reject this Agreement, that will not constitute a rejection of any prior arbitration between you and us.**

THIS IS A COPY
This is the Authoritative Copy h
by the designated custodian

Selection of Arbitration Administrator. Unless prohibited by applicable laws, any Claim shall be resolved, on your election or ours, by arbitration under this Agreement.

You may select as the administrator either of the organizations listed at the end of this Agreement. If we want to arbitrate, we will tell you in writing. That may include a motion to compel arbitration that we file in court. You will have 20 (twenty) days to select the administrator (or, if you dispute our right to require arbitration of the Claim, 20 (twenty) days after that dispute is finally resolved). If you do not choose an administrator within the 20-day period, we will do so.

If for any reason the administrator is unable, unwilling, or ceases to be the administrator, you will have 20 (twenty) days to choose the other organization listed at the end of this Agreement. If you do not select a new administrator within that period, we will do so. If neither organization is willing or able to be the administrator, then the administrator will be selected by the court. Notwithstanding any language in this Agreement to the contrary, no arbitration may be administered, without the consent of all parties to the arbitration, by any administrator that has in place a formal or informal policy that is inconsistent with the paragraph below captioned "No Class Action or Private Attorney General Action."

If a party files a lawsuit in court asserting Claim(s) that are subject to arbitration and the other party files a motion to compel arbitration with the court which is granted, it will be the responsibility of the party prosecuting the Claim(s) to commence the arbitration proceeding.

Location of Hearing. Any arbitration hearing you attend shall be in the federal judicial district of your residence.

No Class Action or Private Attorney General Action. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding. This paragraph does not apply to any lawsuit filed against us in court by a state or federal government agency even when such agency is seeking relief on behalf of a class of buyers/borrowers including you. This means that we will not have the right to compel arbitration of any claim brought by such an agency.

Notice and Cure; Special Payment: Prior to initiating a Claim, you may give us a written Claim Notice describing the basis of your Claim and the amount you would accept in resolution of the Claim, and a reasonable opportunity, not less than 30 days, to resolve the Claim. If (i) you submit a Claim Notice in accordance with this Paragraph on your own behalf (and not on behalf of any other party); (ii) you cooperate with us by promptly providing the information we reasonably request; (iii) we refuse to provide you with the relief you request; and (iv) the arbitrator subsequently determines that you were entitled to such relief (or greater relief), you will be entitled to a minimum award of at least $7,500 (not including any arbitration fees and attorneys' fees and costs to which you will also be entitled).

Fees and Expenses. An arbitration administrator and arbitrator may waive or reduce its fees for financial hardship. If you ask in writing, we will pay all administrator and arbitrator fees up to $2,500 that the administrator will not waive for any Claims you assert in good faith.

We will consider in good faith your request to pay all or part of any administrator or arbitrator fees over $2,500 ("additional fees"). To the extent we do not approve your request, if the arbitrator issues an award to you, we will still pay you for additional fees you must pay the administrator and/or arbitrator as follows:

(1) In the case of additional fees based on the amount of your Claim or the value of the relief you sought, we will pay you an amount equal to the fees you would have paid if the amount of your Claim or the value of the relief you sought had been the amount or value of the award to you.
(2) In the case of other additional fees not based on the amount of your Claim or the value of the relief you sought, we will pay you for the amount of such additional fees.
(3) If we are required to pay any greater sums under applicable law or in order for this Agreement to be enforced, we will pay such amounts.

Case ID: 220600355

THIS IS A COPY
This is a copy view of the Authoritative Copy h
by the designated custodian

We will bear the administrator and arbitrator fees we are normally required to pay and will also bear the expense of our attorneys, experts and witnesses, except where applicable law and the Contract allow us to recover attorneys' fees and/or court costs in a collection action we bring. You will bear the expense of your attorneys, experts and witnesses if we prevail in an arbitration. However, in an arbitration you commence, we will pay your reasonable fees if you prevail or if we must bear such fees in order for this Agreement to be enforced. Also, we will bear any fees if applicable law requires us to.

<u>Applicable Law, Award of Arbitrator and Right to Appeal.</u> Because the Contract involves a transaction in interstate commerce, the Federal Arbitration Act ("FAA") governs this Agreement. The arbitrator shall apply applicable substantive law consistent with the FAA. The arbitrator shall apply applicable statutes of limitations. The arbitrator is authorized and given the power to award all remedies that would apply if the action were brought in court. Either party may make a timely request for a brief written explanation of the basis for the award. The arbitrator shall not apply federal or state rules of civil procedure or evidence.

Judgment on the arbitrator's award may be entered in any court with jurisdiction. Otherwise, the award shall be kept confidential.

The arbitrator's decision is final and binding, except for any right of appeal provided by the FAA. However, if the amount of the Claim exceeds $50,000 or involves a request for injunctive or declaratory relief that could foreseeably involve a cost or benefit to either party exceeding $50,000, any party can appeal the award to a three-arbitrator panel administered by the administrator, which panel shall reconsider any aspect of the initial award requested by the appealing party. The decision of the panel shall be by majority vote. Reference in this Agreement to "The arbitrator" shall mean the panel of arbitrators if an appeal of the arbitrator's decision has been taken. The costs of such an appeal will be borne in accordance with the paragraph captioned "Fees and Expenses" above.

<u>Miscellaneous.</u> This Agreement survives payment of all amounts you owe, if any, under the Contract. It also survives your bankruptcy and any sale by us of your Contract.

If there is a conflict or inconsistency between the administrator's rules and this Agreement, this Agreement governs. If there is a conflict or inconsistency between this Agreement and the Contract, this Agreement governs. If a court or arbitrator deems any part of this Agreement invalid or unenforceable under any law or statute consistent with the FAA, the remaining parts of this Agreement shall be enforceable despite such invalidity. However, if a court limits or voids any part of the above paragraph captioned "No Class Actions or Private Attorney General Actions" in any proceeding, then this entire Agreement (except for this sentence) shall be null and void with respect to such proceeding, subject to the right to appeal such limitation or voiding.

This Agreement (if you do not reject) will supersede any prior arbitration agreement between you and us with respect to any Claim.

**BY SIGNING BELOW, YOU EXPRESSLY AGREE TO THE ABOVE AGREEMENT. THE AGREEMENT MAY SUBSTANTIALLY LIMIT YOUR RIGHTS IN THE EVENT OF A DISPUTE. YOU ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THIS AGREEMENT.**

_Tajae Bradley_
_____
Customer Signature

_____
Customer Signature

By: _____
Authorized Signature

Date: _____ 04/22/2021 _____

**ARBITRATION ADMINISTRATORS**

If you have a question about the administrator mentioned in this Agreement or if you would like to obtain a copy of their arbitration rules or fee schedules, you can contact them as follows:

American Arbitration Association (AAA)
13455 Noel Road, Suit 1750
Dallas, TX 75240-6620
www.adr.org

J.A.M.S./Endispute
700 11th Street, NW, Suite 450
Washington, DC 20001
www.jamsadr.com/arbitration
(800) 352-5267

FILED

2021 SEP 20  AM 11: 33

PA DEPARTMENT OF
BANKING AND SECURITIES

**COMMONWEALTH OF PENNSYLVANIA**
**DEPARTMENT OF BANKING AND SECURITIES**

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** : | |
| **DEPARTMENT OF BANKING AND** : | |
| **SECURITIES, COMPLIANCE OFFICE** : | |
| : | |
| **v.** : | **DOCKET NO. 21 0073** **(BNK-CAO)** |
| : | |
| **HIGH LEVEL AUTO** : | |
| : | |

## CONSENT AGREEMENT AND ORDER

The Commonwealth of Pennsylvania, acting through the Department of Banking and

Securities ("Department"), Compliance Office ("Office"), has reviewed the business practices of

High Level Auto ("HLA"). Based on the results of its review, together with certain disclosures

HLA has made to the Department, the Office believes that HLA operated in violation of the

Consumer Credit Code, 12 Pa. C.S. § 6201 *et seq.*, ("CCC"). The parties to the above captioned

matter, in lieu of litigation, hereby stipulate that the following statements are true and correct in

the settlement of the above-captioned matter, and intending to be legally bound, hereby agree to

the terms of this Consent Agreement and Order ("Order").

### BACKGROUND

1. The Department is the Commonwealth of Pennsylvania's administrative agency

authorized and empowered to administer and enforce the CCC.

2. The Office is primarily responsible for administering and enforcing the CCC for the

Department.

3. HLA's principal place of business is located at 258 8th Ave, Homestead, PA 15120.

4. HLA is licensed as an installment seller, license #28828, effective October 28, 2009,

under the CCC.

## VIOLATION – IMPROPER DELIVERY FEES

5.  Section 6233(b) of the CCC states, *"A licensee may not directly or indirectly charge, contract for, collect or receive from the buyer, in connection with the retail sale of a motor vehicle under an installment sale contract, any further or other amount for costs, charges, examination, appraisal, service, brokerage, commission, expense, interest, discount, fees, fines, penalties or other thing of value in excess of the amounts permitted..."* 12 Pa. C.S. § 6233(b).

6.  There is no authorization in the CCC for a licensee to charge a delivery fee.

7.  HLA violated section 6233(b) of the CCC in that HLA charged delivery fees on contracts.

## VIOLATION – EXCESSIVE INTEREST RATE

8.  Section 6243(e)(2) of the CCC states: ... *"A finance charge for an older used motor vehicle, of a model designated by the manufacturer during a year more than two years prior to the year in which the sale is made, may not exceed the equivalent of 21% simple interest per year on the unpaid balance."* 12 Pa. C.S. § 6243(e)(2).

9.  HLA violated section 6243(e)(2) of the CCC when it contracted for an interest rate in excess of 21% simple interest.

## VIOLATION – FALSIFICATION OF RECORDS

10. Section 6218(a)(8) of the CCC states in pertinent part: ... *"The Department may revoke or suspend a license if it discovers a fact or condition that, had it existed or been discovered at the time of filing of any license application, would have warranted disapproval of the application or if it finds that the licensee has engaged in...falsified records required by this chapter to be maintained of the business contemplated by this chapter.*

11. HLA violated section 6218(a)(8) when it falsified a record by changing number values on an installment contract which the consumer had already signed and executed. 12 Pa. C.S. § 6218(a)(8).

Authority of the Department

12. The CCC grants the Department the authority to issue orders as may be necessary for the enforcement of the CCC.  12 Pa. C.S. § 6203(a)(5).

13. Section 6274 of the CCC provides that "[a] person required to be licensed under this chapter that violates this chapter, directs a violation of this chapter or engages in an activity for which a license could be suspended or revoked under section 6218 (relating to revocation or suspension of license) shall be subject to a civil penalty levied by the department of not more than $2,000 for each offense." 12 Pa. C.S. § 6274.

**CORRECTIVE ACTION**

14. HLA shall refund the delivery fee to all consumers who were charged a delivery fee.

15. HLA shall refund or credit to the consumer's account any interest charged in excess of the allowable interest rate.

16. The refunds and credits will be made according to a schedule which the Department will provide to HLA, however, HLA may make the refunds or credits in advance of the schedule.

17. HLA shall notify the Office when the refunds are made.  Specifically, HLA will provide Andrew Bohr of the Office with evidence that the refund has been made.  The evidence shall include, at a minimum, a copy of a check or a ledger entry showing the credit or refund made to the consumer by the due date.

18. Going forward, HLA shall not charge any fees not authorized by the CCC.

19. Going forward, HLA shall not contract for an interest rate in excess of the allowable amount.

20. Going forward HLA, shall not make changes to records for any reason. On the account where figures were changed on HLA's copy of the contract, HLA shall only collect the amounts stated on the original contract signed by the consumer and shall refund to the consumer any additional money paid as a result of the change.

## RELIEF

21. Fine. HLA agrees to pay a fine of four thousand dollars ($4,000). The fine is due in 8 installments of five hundred ($500) dollars. The first payment is due after the refunds are completed but no later than one hundred fifty (150) days after the Effective Date of the Order. The remaining installments will be due within 30 days of each previous payment. The fine payment shall be paid through the Department of Banking and Securities Portal.

## FURTHER PROVISIONS

22. Consent. HLA hereby knowingly, willingly, voluntarily and irrevocably consents to the entry of this Order pursuant to the Department's order authority under the CCC and agrees that it understands all of the terms and conditions contained herein. HLA, by voluntarily entering into this Order, waives any right to a hearing or appeal concerning the terms, conditions and/or penalties set forth in this Order.

23. Consumer's Rights. This Order shall not limit or impair a consumer's rights under the CCC. 12 Pa. C.S. § 6236.

24. Publication. The Department will publish this Order pursuant to its authority in Section 302.A.(5) of the Department of Banking and Securities Code. 71 P.S. § 733-302.A.(5).

25. Entire Agreement. This Order contains the whole agreement between the parties. There are no other terms, obligations, covenants, representations, statements, conditions, or otherwise, of any kind whatsoever concerning this Order. This Order may be amended in writing by mutual agreement by the Office and HLA.

26. Binding Nature. The Department, HLA, and all officers, owners, directors, employees, heirs and assigns of HLA intend to be and are legally bound by the terms of this Order.

27. Counsel. This Order is entered into by the parties upon full opportunity for legal advice from legal counsel.

28. Effectiveness. HLA hereby stipulates and agrees that the Order shall become effective on the date that the Office executes this Order ("Effective Date").

29. Other Enforcement Action.

      a.    The Department reserves all of its rights, duties, and authority to enforce all statutes, rules and regulations under its jurisdiction against HLA in the future regarding all matters not resolved by this Order.

      b.    HLA acknowledges and agrees that this Order is only binding upon the Department and not any other local, state or federal agency, department or office regarding matters within this Order.

30. Authorization. The parties below are authorized to execute this Order and legally bind their respective parties.

31. Counterparts. This Order may be executed in separate counterparts and by facsimile or electronic mail in portable document format "PDF".

32. Titles. The titles used to identify the paragraphs of this document are for the convenience of reference only and do not control the interpretation of this document.

33. <u>Review.</u>  This Order is subject to review by the Department's Legal Office.

**WHEREFORE,** in consideration of the foregoing, including the recital paragraphs, the Department of Banking and Securities, Compliance Office and High Level Auto intending to be legally bound do hereby execute this Consent Agreement and Order.

**FOR THE COMMONWEALTH OF PENNSYLVANIA, DEPARTMENT OF BANKING AND SECURITIES, COMPLIANCE OFFICE**

Redacted

_____

James Keiser, Chief
Compliance Office
Department of Banking and Securities

Date: 09/20/2021

**FOR HIGH LEVEL AUTO**

Redacted

_____
(Officer Signature)


_____
(Print Officer Name)

_President_
_____
(Title)

Date: 9/12/2021