## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **TAJAE BRADLEY,** individually and as a representative of the Class, | ) ) ) | |
| | ) | **Case No. 2:22-cv-02525-MMB** |
| | ) | |
| **Plaintiff,** | ) | **CLASS ACTION** |
| v. | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **CARVANA, LLC** | ) | **ORAL ARGUMENT REQUESTED** |
| | ) | |
| **Defendant.** | ) | |
| | ) | |
| | ) | |
| | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF CARVANA, LLC'S MOTION TO <u>COMPEL ARBITRATION AND TO DISMISS</u>

Eric Leon (New York Bar No. 2626562)
(Admitted *Pro Hac Vice*)
eric.leon@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200

Robert C. Collins III (Illinois Bar No. 6304674)
(Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700

Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone: (215) 523-5302

August 29, 2022                    *Attorneys for Defendant Carvana, LLC*

# <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ..................................................................................................................1

FACTUAL BACKGROUND ..............................................................................................3

    A.    Plaintiff Agreed To A Binding Arbitration Provision ..............................................3

    B.    Plaintiff Waived The Right To File Class Litigation Or To Proceed In A Representative Capacity.................................................................................................4

    C.    Plaintiff Filed This Lawsuit Despite Having Waived The Right To Do So ............5

ARGUMENT ........................................................................................................................5

I.      THE COURT SHOULD ENFORCE PLAINTIFF'S AGREEMENT TO ARBITRATE HER INDIVIDUAL CLAIMS ....................................................................5

    A.    Plaintiff And Carvana Entered Into A Valid Arbitration Agreement .....................6

    B.    This Dispute Falls Within The Scope Of The Arbitration Agreement ....................7

    C.    Plaintiff Must Arbitrate Her Dispute On A Non-Class Basis ..................................8

    D.    Section 6221(a) Of The CCC Does Not Bar The Enforcement Of Plaintiff's Agreement To Arbitrate On A Non-Class Basis.....................................8

          1.    The RISC, RPA, And Arbitration Agreement Form A Single Contract..........................................................................................................9

          2.    Section 6221(a) Of The CCC Is Preempted On Its Face ...........................10

          3.    Section 6221(a) Of The CCC Is Preempted Because, As Applied, It Stands As An Obstacle To Congress' Purpose In Enacting The FAA....................................................................................................................11

          4.    Another Pennsylvania Court Has Enforced Carvana's Arbitration Agreement In A Similar Context ................................................................12

II.    PLAINTIFF'S COMPLAINT ALTERNATIVELY FAILS TO STATE A CLAIM........13

    A.    Plaintiff's Claims Should Be Dismissed Because Delivery Fees And Transit Charges Are Lawful.................................................................................14

    B.    Plaintiff's Unjust Enrichment Claim Fails Because The Parties' Relationship Is Governed By An Express Contract.................................................17

C.      Plaintiff's UTPCPL Claims Should Be Dismissed For Failure To State A Claim.................................................................................................................18

CONCLUSION...................................................................................................................................19

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Angino v. Wells Fargo Bank, N.A.*,
   666 F. App'x 204 (3d Cir. 2016) ......................................................................... 13

*Antrim Min., Inc. v. Davis*,
   775 F. Supp. 165 (M.D. Pa. 1991) ................................................................ 16, 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 13

*AT&T v. Concepcion*,
   563 U.S. 333 (2011) ..................................................................................... passim

*Bell Atlantic v. Twombly*,
   550 U.S. 544 (2007) ............................................................................................ 13

*Berkery v. Cross Country Bank*,
   256 F. Supp. 2d 359 (E.D. Pa. 2003) ............................................................... 7, 8

*Brayman Constr. Corp. v. Home Ins. Co.*,
   319 F.3d 622 (3d Cir. 2003) .............................................................................. 6, 7

*Brogan v. Fred Beans Motors of Doylsetown, Inc.*,
   2020 WL 1666464 (E.D. Pa. Apr. 3, 2020) ........................................................ 19

*Brown v. City of Phil.*,
   2010 WL 4484630 (E.D. Pa. Nov. 9, 2010) .......................................................... 7

*Burden v. Carvana, LLC*,
   No. 200801110 (Pa. Ct. Com. Pl.) (Nov. 3, 2020) (Ex. 2) .................................. 12

*Cahill v. Alt. Wines, Inc.*,
   2013 WL 427396 (N.D. Iowa 2013) .................................................................. 11

*City of Chester v. Pub. Util. Comm'n*,
   773 A.2d 1280 (Pa. Commw. Ct. 2001) ............................................................. 16

*City of Philadelphia v. Pennsylvania Pub. Util. Comm'n*,
   676 A.2d 1298 (Pa. Commw. Ct. 1996) ............................................................. 17

*Dean v. Draughons Jr. College, Inc.*,
   917 F. Supp. 2d 751 (M.D. Tenn. 2013) ............................................................ 11

*Dean Witter v. Byrd*,
    470 U.S. 213 (1985) .................................................................................... 6

*Devinney v. Mindlance, Inc.*,
    2013 WL 3967613 (E.D. Pa. Aug. 2, 2013) ............................................ 10

*Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*,
    877 F.3d 487 (3d Cir. 2017) ..................................................................... 3

*Firefighters v. Cleveland*,
    478 U.S. 501 (1986) .................................................................................. 16

*Fitz v. Islands Mech. Contractor, Inc.*,
    2010 WL 2384585 (D.Vi. 2010) ............................................................. 11

*Homa v. Am. Express Co.*,
    494 F. App'x 191 (3d Cir. 2012) .......................................................... 6, 8

*Homziak v. Gen. Elec. Capital Warranty Corp.*,
    839 A.2d 1076 (Pa. Super. Ct. 2003) .............................................. 14, 17

*Hrapczynski v. Bristlecone, Inc.*,
    2021 WL 3209852 (E.D. Pa. July 29, 2021) ........................................... 3

*Huegel v. Mifflin Const. Co.*,
    796 A.2d 350 (Pa. Super. 2002) ............................................................... 9

*In re Remicade (Direct Purchaser) Antitrust Litig.*,
    938 F.3d 515 (3d Cir. 2019) ..................................................................... 5

*Kahn v. Option One Mortg. Corp.*,
    2006 WL 156942 (E.D. Pa. Jan. 18, 2006) ............................................. 7

*Kemezis v. Matthews*,
    394 F. App'x 956 (3d Cir. 2010) ........................................................... 19

*Kiessling v. Am. Bankers Life Assur. Co. of Fla.*,
    2008 WL 5248246 (M.D. Pa. 2008) ...................................................... 11

*KKW Enters. Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*,
    184 F.3d 42 (1st Cir. 1999) .................................................................... 11

*Knight v. Springfield Hyundai*,
    81 A.3d 940 (Pa. Super. 2013) ...................................................... 9, 10, 11

*Kroblin Refrigerated Xpress, Inc. v. Pitterich*,
    805 F.2d 96 (3d Cir. 1986) ....................................................................... 9

*Litman v. Cellco P'ship*,
  655 F.3d 225 (3d Cir. 2011)........................................................................... 10

*Mitsubishi v. Soler*,
  473 U.S. 614 (1985)....................................................................................... 6

*Nelson v. Gobrands, Inc.*,
  2021 WL 4262325 (E.D. Pa. Sept. 20, 2021) ................................................ 8

*Philadelphia Hous. Auth. v. CedarCrestone, Inc.*,
  562 F Supp. 2d 653 (E.D. Pa. 2008) ............................................................. 18

*Quilloin v. Tenet HealthSys. Phil., Inc.*,
  673 F.3d 221 (3d Cir. 2012)........................................................................... 5

*Richardson v. Coverall N. Am., Inc.*,
  811 F. App'x 100 (3d Cir. 2020) ................................................................... 6

*Rosenberg v. XM Ventures*,
  274 F.3d 137 (3d Cir. 2001)........................................................................... 15

*Sanford v. Bracewell & Guiliani, LLP*,
  618 F. App'x 114 (3d Cir. 2015) ................................................................... 6

*Schwartz v. Comcast Corp.*,
  256 F. App'x 515 (3d Cir. 2007) ................................................................... 7

*Sherwin-Williams Co. v. PPG Indus., Inc.*,
  2020 WL 1283465 (W.D. Pa. Mar. 18, 2020) ............................................... 9

*Sosa v. DIRECTV, Inc.*,
  437 F.3d 923 (9th Cir. 2006) ......................................................................... 19

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)........................................................................................... 11

*Sw. Energy Prod. Co. v. Forest Res.*,
  LLC, 83 A.3d 177 (Pa. Super. 2013) ............................................................. 6

*Taylor v. Extendicare Health Facilities, Inc.*,
  147 A.3d 490 (Pa. 2016) ................................................................................ 12

*Trust Under Agreement of Taylor*, 164 A.3d 1147 (Pa. 2017) ..................................... 16

*Valentin v. ADECCO*,
  777 F. App'x 50 (3d Cir. 2019) ..................................................................... 6

*Velazquez v. State Farm Fire & Cas. Co.*,
  2020 WL 1942784 (E.D. Pa. Mar. 27, 2020)............................................. 18, 19

*Walter v. Magee-Womens Hosp. of UPMC Health Sys.*,
876 A.2d 400 (Pa. Super. 2005)............................................................................ 18

*Wilson Area Sch. Dist. v. Skepton*,
895 A.2d 513 (Pa. 2006) ................................................................................ 17, 18

*Wu v. Capital One, N.A.*,
2014 WL 3673041 (D.N.J. July 22, 2014)............................................................ 19

## STATUTES

12 Pa. C.S.A. § 6201 ............................................................................................ 5, 14

12 Pa. C.S.A. § 6221 ................................................................................ 8, 9, 10, 11

12 Pa. C.S.A. § 6222 ........................................................................................ 14, 15, 16

12 Pa. C.S.A. § 6233 ........................................................................................ 14, 15, 16

12 Pa. C.S.A. § 6242 ................................................................................................ 16

42 Pa. C.S.A. § 6903 ................................................................................................ 14

9 U.S.C. § 2........................................................................................................ 5, 11

## RULES

Fed. R. Civ. P. 12(b)(6)................................................................................. 1, 6, 13

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendant Carvana, LLC ("Carvana") respectfully submits this memorandum of law in support of its Motion to Compel Arbitration and to Dismiss ("Motion") the claims asserted by Plaintiff Tajae Bradley ("Plaintiff") in her Complaint (Dkt. 1, Ex. 1) (the "Complaint").

## INTRODUCTION

Plaintiff filed her Complaint alleging that Carvana charged her a purportedly illegal "delivery fee." Plaintiff's Complaint fails because her claims (1) are subject to binding individual arbitration pursuant to an arbitration agreement that Plaintiff admits she entered into ("Arbitration Agreement") and (2) are meritless.

Plaintiff does not deny that the Arbitration Agreement covers the claims in her Complaint. Instead, she argues that the Arbitration Agreement is unenforceable pursuant to Pennsylvania's so-called "one-document rule" because it was not contained within the parties' financing contract itself (the Retail Installment and Security Contract ("RISC")). Plaintiff is wrong. The Arbitration Agreement is expressly incorporated into the RISC as well as the parties' Retail Purchase Agreement ("the RPA"), and thus complies with Pennsylvania's one-document rule. For this reason alone, the Court should compel arbitration on an individual basis and dismiss or stay Plaintiff's claims.

In addition to being inapplicable, Pennsylvania's one-document rule is preempted under the Federal Arbitration Act ("FAA") and decades of Supreme Court precedent. The FAA unquestionably preempts state-law rules regarding arbitration that do not apply to all contracts generally. Pennsylvania's one-document rule is *limited* to the financed motor-vehicle industry, does *not* apply to *non*-financed motor-vehicle sales or *any other* type of contract, and thus violates this bedrock rule of law. Moreover, Pennsylvania's one-document rule is independently preempted as applied. The rule has been disproportionately used to prevent the enforcement of

1

arbitration agreements, standing as an obstacle to Congress' principal purpose in enacting the FAA to ensure private arbitration agreements are enforced according to their terms, in violation of *AT&T v. Concepcion*, 563 U.S. 333 (2011).

Even if Plaintiff had not agreed that her claims would be resolved by individual arbitration, her Complaint fails to state a claim, and thus should be dismissed for this additional reason.  First, both of Plaintiff's claims are based on a patently incorrect interpretation of the Pennsylvania Consumer Credit Code (the "CCC") (formerly the Motor Vehicle Sales Finance Act).  Plaintiff's Complaint turns entirely on the allegation that Carvana charged Plaintiff a delivery fee in connection with a financed motor vehicle sale in violation of the CCC.  But Pennsylvania law permits delivery and transit fees in non-financed motor vehicle sales, and the CCC does not restrict that right in the financed space.  On the contrary, the plain language of the CCC establishes that Carvana is permitted to assess a charge for delivery or transit, as well as other necessary and incidental fees, in connection with a financed vehicle sale.  Unable to overcome the plain text of the law, Plaintiff cites a non-binding consent agreement and order under which a third-party car dealer allegedly stipulated that it could not charge a delivery fee, but that consent agreement has no precedential or persuasive value, and otherwise has no bearing on this case.  It does not change the plain language of the statute at issue, and settled case law prohibits reliance on these types of stipulated consent agreements and orders between unrelated parties.  The CCC permits delivery and transit fees, and Plaintiff's claim is baseless.

Second, Plaintiff's claim for unjust enrichment independently fails because the parties' relationship is governed by a written agreement, and regardless, Plaintiff alleges that Carvana provided the transit or delivery service contemplated by the fee at issue, such that any alleged enrichment cannot be *unjust*.

Third, Plaintiff attempts to bring a claim under Pennsylvania's Unfair Trade Practice Consumer Protection Law ("UTPCPL"), but misstatements of the law (i.e., whether a fee is permitted by the CCC or not) are not actionable. Plaintiff thus fails to allege a deceptive act.

Should the Court decline to compel individual arbitration, it should dismiss the Complaint for failure to state a claim.

## FACTUAL BACKGROUND

### A.      Plaintiff Agreed To A Binding Arbitration Provision

Plaintiff alleges that she purchased a used 2014 Kia Sportage on or about April 22, 2021, which Carvana delivered to her residence. *See* Compl. ¶¶ 31, 34. Plaintiff alleges that, in connection with her purchase, she simultaneously signed the RISC (i.e., the installment financing agreement), an "Arbitration Agreement," and several other "sales and delivery documents for the transaction," including the RPA (i.e., the purchase agreement). *Id*. ¶ 35; *see also* Compl., Ex. A; Ex. B, Ex. 1 to Decl. of R. Collins III.[1] Plaintiff alleges that the RISC included, among other things, a "Transit Charge" in the amount of $490.00. *Id*. ¶¶ 32, 38. The RISC dealt only with how the purchase of the vehicle was financed. *See* Compl., Ex. A. The RPA addressed the terms of the purchase itself, including the services rendered for particular fees, and in that context, it documents the same "Transit Charge" in the amount of $490.00. *See* Ex. 1 at 1. The Arbitration Agreement confirms that it is a "part of, and . . . hereby incorporated into" the RISC as well as the

---

[1] The Court may consider any agreements or documents "integral to or explicitly relied on" in the Complaint. *See Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 493 (3d Cir. 2017); *see also, e.g.*, *Hrapczynski v. Bristlecone, Inc.*, 2021 WL 3209852, at *3 (E.D. Pa. July 29, 2021) (observing that "[i]t would frustrate the purposes of the Federal Arbitration Act if plaintiffs could avoid having their claims quickly compelled to arbitration simply by failing to mention the existence of clearly applicable arbitration agreements in their complaints").

RPA.[2]  *See* Compl., Ex. B at 1.

Pursuant to the Arbitration Agreement, Plaintiff broadly agreed to "final and binding" arbitration of "any claim, dispute or controversy between" Plaintiff and Carvana "arising from or related to" (among other things) the "Contract," which includes the RISC and the RPA; the "vehicle or sale of the vehicle"; the "provision or sale of any goods and services like warranties, insurance and extended service contracts covered by the Contract or related to the vehicle," "[a]dvertisements, promotions or oral or written statements related to the Contract"; and the "financing terms."  Compl., Ex. B at 2.  Plaintiff agreed that the FAA governs the Arbitration Agreement.  *Id.* at 4.  Plaintiff further agreed that the definition of a "Claim" subject to arbitration should be construed to have the "broadest reasonable meaning" and to include "claims of every kind of nature," including but not limited to "statutory claims," "contract claims," and "tort claims (including claims of fraud and other intentional torts)."  *Id.*

**B.**     **Plaintiff Waived The Right To File Class Litigation Or To Proceed In A Representative Capacity**

In addition to agreeing to submit this dispute to arbitration, Plaintiff agreed to a class waiver.  *See* Compl., Ex. B at 1.  In particular, the Arbitration Agreement provides:

> No Class Action or Private Attorney General Action. Notwithstanding any language herein to the contrary, if you or we elect to arbitrate a Claim, neither you nor we will have the right to: (1) participate in a class action in court or in arbitration, either as a class representative, class member or class opponent; (2) act as a private attorney general in court or in arbitration, or (3) join or consolidate your Claim(s) with claims of any other person, and the arbitrator shall have no authority to conduct any such class, private attorney general or multiple-party proceeding.

---

[2] The RPA further contains a provision titled (in bold) "**Arbitration Agreement**" that expressly incorporates the Arbitration Agreement that Plaintiff executed with Carvana at the time of her purchase.  Ex. 1 at 3.

*Id.* at 3.

The first page of the Arbitration Agreement, in a section titled "NOTICE OF ARBITRATION AGREEMENT," similarly notified Plaintiff that she could pursue claims against Carvana only on an individual basis, and not on a class basis:

> If you or we choose arbitration, only our individual claims will be arbitrated. Claims by groups of individuals or "Class" arbitrations, are not allowed. By choosing to arbitrate, you will be giving up your right to participate in a class action or a private attorney general action in court or in arbitration with respect to the dispute.

*Id.* at 1.

### C.     Plaintiff Filed This Lawsuit Despite Having Waived The Right To Do So

Notwithstanding her agreement to arbitrate her claims on a non-class basis, Plaintiff filed her class action Complaint on June 3, 2022, alleging that Carvana charges "illegal delivery fees" in violation of the CCC, 12 Pa. C.S.A. § 6201 *et seq.  See* Compl. ¶ 1.  Plaintiff defines the proposed class as "[a]ll persons who purchased a motor vehicle from Carvana, arranged for delivery of the motor vehicle into Pennsylvania, and, within the applicable statute of limitations, were charged an amount purporting to represent a delivery fee or 'Transit Charge.'"  *Id.* ¶ 45.  Carvana timely removed the case to federal court on June 28, 2022.  *See* Notice of Removal (Dkt. 1).

## ARGUMENT

### I.     THE COURT SHOULD ENFORCE PLAINTIFF'S AGREEMENT TO ARBITRATE HER INDIVIDUAL CLAIMS

There is a strong federal policy in favor of arbitration.  *See, e.g.*, *AT&T v. Concepcion*, 563 U.S. 333, 339 (2011); *Quilloin v. Tenet HealthSys. Phil., Inc.*, 673 F.3d 221, 228 (3d Cir. 2012). That policy is embodied in the FAA, which provides that an agreement to arbitrate "shall be valid, irrevocable, and enforceable."  9 U.S.C. § 2; s*ee also In re Remicade (Direct Purchaser) Antitrust Litig.*, 938 F.3d 515, 519 (3d Cir. 2019).  The FAA was enacted "in response to widespread judicial

hostility to arbitration agreements," *Homa v. Am. Express Co.*, 494 F. App'x 191, 197 (3d Cir. 2012); *see also Concepcion*, 563 U.S. at 339, and "leaves no place for the exercise of discretion by a district court," mandating instead that "district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration provision has been signed." *Dean Witter v. Byrd*, 470 U.S. 213, 218 (1985).

Federal courts follow a two-step analysis to determine whether to enforce an arbitration clause, asking (i) whether there is a valid agreement to arbitrate, and if so, (ii) whether that agreement encompasses the dispute at issue. *Richardson v. Coverall N. Am., Inc.,* 811 F. App'x 100, 103 (3d Cir. 2020). "[W]hen it cannot be said with *positive assurance* that the parties have clearly and unequivocally excepted a certain dispute from arbitration, the court must compel arbitration," *Valentin v. ADECCO*, 777 F. App'x 50, 51 (3d Cir. 2019), and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *See Brayman Constr. Corp. v. Home Ins. Co.*, 319 F.3d 622, 625 (3d Cir. 2003); *see also Mitsubishi v. Soler*, 473 U.S. 614, 626 (1985). Dismissal based on an arbitration provision can be sought pursuant to Rule 12(b)(6). *See Sanford v. Bracewell & Guiliani, LLP*, 618 F. App'x 114, 118 (3d Cir. 2015).

### A.       Plaintiff And Carvana Entered Into A Valid Arbitration Agreement

Plaintiff entered into a valid and enforceable agreement to arbitrate with Carvana. *See* Compl. ¶ 35; *see also id.*, Ex. B. As part of the purchase of her vehicle and at the same time she executed the RISC and the RPA, Plaintiff signed the Arbitration Agreement, which contains the arbitration provision and class waiver as well as a "NOTICE OF ARBITRATION AGREEMENT." *See id.*, Ex. B. The Arbitration Agreement further provides that it applies to and is incorporated into the RISC as well as the RPA. *See* Compl., Ex. B at 1. Plaintiff also signed the RPA as part of the purchase of her vehicle, and the RPA contains a provision titled (in bold) "Arbitration Agreement" that expressly incorporates the Arbitration Agreement. *See Sw. Energy*

6

*Prod. Co. v. Forest Res.,* LLC, 83 A.3d 177, 187 (Pa. Super. 2013) (terms expressly incorporated into a contract must be enforced as if stated therein).  Plaintiff thus clearly entered into a valid agreement to arbitrate her dispute with Carvana.  *Schwartz v. Comcast Corp.*, 256 F. App'x 515, 520 (3d Cir. 2007) (enforcing arbitration agreement under Pennsylvania law).

**B.       This Dispute Falls Within The Scope Of The Arbitration Agreement**

The claims asserted in the Complaint fall squarely within the scope of the parties' Arbitration Agreement.  *See* Compl., Ex. B at 2.  The Court's inquiry into the scope of an arbitration clause is limited to "ascertaining whether the party seeking arbitration is making a claim which on its face is governed by the contract."  *Berkery v. Cross Country Bank*, 256 F. Supp. 2d 359, 365 (E.D. Pa. 2003).  Courts adhere to a "presumption of arbitrability," *id.*, and any and all doubts regarding the scope of the arbitration clause must be resolved in favor of arbitration.  *See Brayman*, 319 F.3d at 625.

The Arbitration Agreement here covers, without limitation, any claim of "every kind of nature" arising out of or related to Plaintiff's transaction with Carvana, including but not limited to statutory, contract, and tort claims and claims related to the RISC, the RPA, the vehicle, the sale, and goods and services associated related to the sale.  *See* disc. *supra* at 4; *see also Brown v. City of Phil.*, 2010 WL 4484630, at *7 (E.D. Pa. Nov. 9, 2010) (compelling arbitration where claims covered by the agreement had "the broadest possible interpretation"); *Kahn v. Option One Mortg. Corp.*, 2006 WL 156942, at *4 (E.D. Pa. Jan. 18, 2006) (compelling arbitration where agreement applied to "any claim or controversy of any nature whatsoever arising out of or in any way related to the [contract]").

Plaintiff's claims here plainly arise out of or relate to her "Contract," which is defined to include both the RISC as well as the RPA.  Plaintiff's claims hinge on the allegation that she was "required" to pay a delivery or transit fee that she alleges is not permitted by Pennsylvania law.

7

*See* Compl. ¶¶ 1, 32, 38-40, 45.  The challenged fee is found in the RPA and the financing of the fee is found in the RISC, *id*. ¶ 32, and any disputes pertaining to the RPA and the RISC are within the scope of the arbitration provision.  *Id*., Ex. B at 2.  Plaintiff's claims also arise out of and relate to her "vehicle" and the "sale of the vehicle"; "goods and services" allegedly related to the sale and the vehicles, i.e., the delivery of the vehicle from its location to Plaintiff; and the "collection of amounts" owed by Plaintiff, all of which likewise fall within the scope of the arbitration provision.  *See id*.  Because Plaintiff's claims fall within the scope of the Arbitration Agreement, they belong in binding arbitration.  *Berkery,* 256 F. Supp. 2d at 366.

### C.    Plaintiff Must Arbitrate Her Dispute On A Non-Class Basis

Once in arbitration, Plaintiff must arbitrate her dispute on an individual basis.  Plaintiff agreed that she does not have the right to "participate in a class action in court or in arbitration," including as a class representative.  *See* Compl., Ex. B at 3.  This class waiver is valid and fully enforceable under Pennsylvania law.  *See, e.g.*, *Homa*, 494 F. App'x at 197; *Nelson v. Gobrands, Inc.*, 2021 WL 4262325, at *8 (E.D. Pa.  Sept. 20, 2021) ("Pennsylvania recognizes and enforces class action waivers in arbitration agreements.").  Plaintiff was provided with the opportunity to opt out of the Arbitration Agreement, including the class waiver, but did not.  *See* Compl., Ex. B at 2; *see also Rittenhouse*, 2021 WL 6197361, at *4 (failure to opt-out of voluntary arbitration constitutes acceptance).  The Court should enforce the parties' Arbitration Agreement as written and compel Plaintiff to arbitration on a non-class basis only.

### D.    Section 6221(a) Of The CCC Does Not Bar The Enforcement Of Plaintiff's Agreement To Arbitrate On A Non-Class Basis

Plaintiff argues that the Arbitration Agreement is unenforceable under Section 6221(a) of the CCC, which purportedly "requires the [RISC] to contain all agreements between a buyer and a seller relating to an installment sale of a motor vehicle."  *See* Compl. ¶¶ 36-37 (citing cases,

including *Knight v. Springfield Hyundai*, 81 A.3d 940 (Pa. Super. 2013)).  But Plaintiff's attempt to use the "one-document" rule in Section 6221(a) to avoid the binding Arbitration Agreement to which she voluntarily agreed fails for at least three reasons.  First, the Arbitration Agreement is incorporated into the RISC, and regardless, the RISC, the RPA, and the Arbitration Agreement were signed as part of the same transaction and thus must be read together as a single, integrated whole.  Second, Plaintiff's reading of Section 6221(a) is preempted on its face because it places arbitration agreements in the *financed* motor-vehicle industry on unequal footing with *every other* type of contract under Pennsylvania law, including contracts for motor-vehicle sales that are *not* financed in installments.  *See Concepcion*, 563 U.S. at 339 ("courts must place arbitration agreements *on an equal footing* with other contracts").  Third, Section 6221(a) is preempted because, as applied, it stands as an obstacle to the accomplishment of Congress' objectives in enacting the FAA, in violation of *Concepcion*.

> **1.** **The RISC, RPA, And Arbitration Agreement Form A Single Contract**

Applying Section 6221(a)'s one-document rule to render the Arbitration Agreement unenforceable violates basic tenets of state contract law.  Under Pennsylvania law, agreements executed by the same parties as part of the same transaction are read together as a single, integrated whole.  *See Kroblin Refrigerated Xpress, Inc. v. Pitterich*, 805 F.2d 96, 107 (3d Cir. 1986) ("It is a general rule of contract law that where two writings are executed at the same time and are intertwined by the same subject matter, they should be construed together and interpreted as a whole, each one contributing to the ascertainment of the true intent of the parties."); *Huegel v. Mifflin Const. Co.*, 796 A.2d 350, 354-55 (Pa. Super. 2002) ("Where several instruments are made as part of one transaction they will be read together, and each will be construed with reference to the other."); *Sherwin-Williams Co. v. PPG Indus., Inc.*, 2020 WL 1283465, at *2-3 (W.D. Pa. Mar. 18, 2020).

Here, Plaintiff executed her RISC, RPA, and Arbitration Agreement on the same day, with the same party, and as part of the same transaction for the purchase of her vehicle. *See* Compl., Ex. A; Ex. B. Plaintiff alleges that on April 22, 2022, she "signed various sales and delivery documents for the transaction," including the Arbitration Agreement, *id.* ¶ 35, and the Arbitration Agreement states that it is "incorporated into" the RISC as well as the RPA. *See id.*, Ex B at 1; *see also* Ex. 1 at 3 (RPA was executed on April 22, 2022 and incorporates the Arbitration Agreement). The Arbitration Agreement, the RISC, and the RPA are part of a single, integrated whole, meaning that even if Section 6221(a) required the arbitration provision to be contained within the RISC, the Arbitration Agreement would comply with that requirement. 12 Pa. C.S.A. § 6221(a)(2); *see also, e.g.*, *Devinney v. Mindlance, Inc.*, 2013 WL 3967613, at *2 (E.D. Pa. Aug. 2, 2013) (all documents relevant to plaintiff's employment were negotiated and executed together and thus were viewed as a single employment contract). It would contravene state law—and common sense—if, as Plaintiff contends, the Arbitration Agreement were of no force or effect *at the moment it was signed* together with the RISC.

## 2. Section 6221(a) Of The CCC Is Preempted On Its Face

Plaintiff's interpretation of the CCC also runs headlong into FAA preemption. By its terms, the one-document rule in Section 6221(a)(2) applies only to installment contracts, *not* to all contracts "generally" or even to "any contract" for the sale of a motor vehicle. *See* 12 Pa. C.S.A. § 6221(a) (applying only to "[a]n installment sale contract"); *Knight*, 81 A.3d at 948 ("not all sales of a motor vehicle are made by installment sales agreements, and thus not all sales require that all agreements be contained in a single document"). As such, the one-document rule is not a generally applicable contract defense; indeed, it would not even apply to all arbitration agreements in all motor vehicle sales contracts. *See Litman v. Cellco P'ship*, 655 F.3d 225, 231 (3d Cir. 2011) (arbitration agreements can only be invalidated "upon such grounds as exist at law or in equity for

10

the revocation *of any contract*," 9 U.S.C. § 2, meaning "*generally applicable* contract defenses, such as fraud, duress, or unconscionability").

Instead, the one-document rule would impermissibly place arbitration agreements in the financed motor-vehicle space on *unequal footing* by subjecting certain arbitration agreements to a requirement (the one-document rule) that applies to some motor vehicle contracts, but not others. *See Knight*, 81 A.3d at 948 (noting that unlike another statute discussed, the CCC does not apply "to all motor vehicle sales generally").   More broadly, the one-document rule would place arbitration agreements in the financed motor-vehicle context on *unequal footing* with arbitration agreements in all other contexts that are not subject to the rule.[3]   *See Kiessling v. Am. Bankers Life Assur. Co. of Fla.*, 2008 WL 5248246, at *3 (M.D. Pa. 2008).  Such an application of the one-document rule is impermissible and preempted.  *See Southland Corp. v. Keating*, 465 U.S. 1, 11 (1984) ("We see nothing in the [FAA] indicating that the broad principle of enforceability is subject to any additional limitations under State law.").

3.       **Section 6221(a) Of The CCC Is Preempted Because, As Applied, It Stands As An Obstacle To Congress' Purpose In Enacting The FAA**

Pennsylvania's one-document rule is also preempted because, as applied, it "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress" in enacting the FAA.  *See Concepcion*, 563 U.S. at 352.  *Knight* and its progeny have fashioned a rule that "disproportionately disfavor[s] arbitration agreements."  *See Dean v. Draughons Jr.*

---

[3] Courts hold that state laws that only apply to a specific type of contract or industry are not "generally applicable" contract defenses, do not meet the FAA's saving clause, and are preempted. *See, e.g.*, *Cahill v. Alt. Wines, Inc.*, 2013 WL 427396, at *5 (N.D. Iowa 2013) ("Iowa Code section 537A.10(3)(a) is not a generally applicable contract defense comparable to fraud, duress or unconscionability.  Rather, section 537A.10(3)(a) applies only to franchise agreements and, therefore, violates the Supremacy Clause because it directly conflicts with § 2 of the FAA."); *Fitz v. Islands Mech. Contractor, Inc.*, 2010 WL 2384585, at *7 (D.Vi. 2010); *KKW Enters. Inc. v. Gloria Jean's Gourmet Coffees Franchising Corp.*, 184 F.3d 42, 50 (1st Cir. 1999).

*College, Inc.*, 917 F. Supp. 2d 751, 763 (M.D. Tenn. 2013).   Proving the point, Plaintiffs'

Complaint lists a number of cases in which courts applied *Knight* to invalidate otherwise

enforceable arbitration agreements.[4]   *See* Compl. ¶ 37.   As a result, the rule announced in *Knight*

frustrates the "principal purpose" of the FAA to "ensur[e] that private arbitration agreements are

enforced according to their terms."   *See Concepcion*, 563 U.S. at 344.   Indeed, if presented with

the question, both the U.S. Supreme Court and the Pennsylvania Supreme Court would find that

the state rule is preempted, and this Court should do the same.   *See Concepcion*, 563 U.S. at 344-

51; *Taylor v. Extendicare Health Facilities, Inc.*, 147 A.3d 490, 509-10 (Pa. 2016) (Pennsylvania

rule "[stood] as an obstacle to achieving the objectives of Congress in enacting the FAA" and was

thus preempted).

### 4. Another Pennsylvania Court Has Enforced Carvana's Arbitration Agreement In A Similar Context

Not surprisingly, another court has already rejected Plaintiff's contention that the CCC

automatically bars enforcement of any arbitration provision not contained in the RISC.   In a recent

action in the Philadelphia Court of Common Pleas, the court was presented with the question of

whether the CCC invalidated a substantially similar arbitration agreement between Carvana and a

vehicle purchaser in light of an installment contract they also executed.   *See* First Am. Compl.,

*Burden v. Carvana, LLC*, No. 200801110 (Pa. Ct. Com. Pl.) (Nov. 3, 2020) (Ex. 2 to Decl. of R.

Collins III) ¶ 193 (alleging that "[t]he subject RISC does not contain a pre-disputed Forced

Arbitration Clause (FAC) or any other arbitration clause."), ¶ 194 (alleging that "[u]nder

Pennsylvania law, the RISC controls the terms and conditions in a financed motor vehicle

purchase, and any provisions set forth outside the RISC are unenforceable."), ¶ 199 (alleging that

---

[4] Notably, the question of federal preemption under the FAA was not raised in any of the opinions that Plaintiff cites.

defendants filed a motion to compel arbitration "asserting an FAC that is found in documents that defendants admit is separate from the RISC"). That court considered whether the one-document rule was preempted, and it *rejected* plaintiff's argument that the CCC barred enforcement of the arbitration agreement and *compelled arbitration*. *See* Order, *Burden* (Dec. 4, 2020) (Ex. 3 to Decl. of R. Collins III). Respectfully, this Court should do the same.

## II.   PLAINTIFF'S COMPLAINT ALTERNATIVELY FAILS TO STATE A CLAIM

In addition to being subject to individual arbitration, Plaintiff claims should be dismissed because they fail to "state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). A complaint fails to state a claim either when it lacks a cognizable legal theory or when it fails to allege sufficient facts to support such a theory. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555-56 (2007). To survive a motion to dismiss, "[t]he complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Angino v. Wells Fargo Bank, N.A.*, 666 F. App'x 204, 206 (3d Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

A. **Plaintiff's Claims Should Be Dismissed Because Delivery Fees And Transit Charges Are Lawful**

Plaintiff's claims are premised on the false allegation that the "delivery fee" at issue is "illegal." *See* Compl. ¶ 39.  It is not.  As a threshold matter, Plaintiff's assertion that the fee is illegal is based entirely on provisions of the CCC, and the CCC applies only within the context of vehicle sales in Pennsylvania that are financed in installments.  *See*, *e.g.*, 12 Pa. C.S.A. § 6201 (The CCC "relates to motor vehicle sales finance."); 12 Pa. C.S.A. § 6233 (The CCC addresses fees "in connection with the retail sale of a motor vehicle under an installment sale contract."). The CCC undisputedly does not apply to, much less prohibit, "delivery fees," or transit charges, in non-financed motor vehicle sales, and Plaintiff does not dispute Carvana's right to charge a delivery fee or transit charge in an RPA itself.  *See* Ex. 1 at 1 (listing $490.00 Transit Charge). Delivery fees and transit charges are unquestionably allowed in non-financed sales under Pennsylvania law.  *See*, *e.g.*, 42 Pa. C.S.A. § 6903 ("delivery charge" required to be disclosed in connection with rental-purchase agreements).

The CCC does not restrict Carvana's ability to charge in a financed sale a delivery or transit fee that Carvana can plainly charge in a non-financed sale.  Plaintiff's interpretation of the CCC to assert that the delivery or transit fee is illegal here is contrary to the statute's plain language.  Plaintiff alleges that the "Transit Charge" at issue is a "delivery fee[]."  *See* Compl. ¶ 1; *see also*, *e.g.*, *id.* ¶¶ 38, 39, 40, 41, 60.  Section 6222 of the CCC states that the RISC "shall contain" any "[c]harges for delivery," making clear that the CCC contemplates and permits delivery fees in financed motor-vehicle sales.  12 Pa. C.S.A. § 6222(5)(i)(B); *see also Homziak v. Gen. Elec. Capital Warranty Corp.*, 839 A.2d 1076, 1083 (Pa. Super. Ct. 2003) (the CCC "allows charges that are related to the *transfer*, *delivery*, service or repair of the vehicle" to be included in the "cash price of the motor vehicle") (emphasis added).  This express reference to "[c]harges for

14

delivery" in Section 56222(5)(i)(B) must be given effect.  *See Rosenberg v. XM Ventures*, 274 F.3d 137, 142 (3d Cir. 2001) (basic principles of statutory construction require that all words of a statute be given effect).  Both of her claims should be dismissed.

Even though the phrase "[c]harges for delivery" is expressly found in Section 6222(5)(i)(B), Plaintiff contends that the Transit Charge which she agreed to pay is illegal because it was purportedly not authorized by Section 6233(a).  *See* Compl. ¶ 24.  But this argument also fails: Section 6233(a) provides that "a licensee may directly or indirectly charge, contract for, collect or receive . . . charges necessary or incidental to the sale of the motor vehicle[.]"  12 Pa. C.S.A. § 6233(a); *see also* 12 Pa. C.S.A. § 6222(5)(v) (retail installment contract should contain "[o]ther charges necessary or incidental to the sale or financing of a motor vehicle which the seller contracts to retain, receive or pay on behalf of the buyer; or for which the seller agrees to extend credit to the buyer as authorized by this chapter . . . .").[5]  Carvana included the Transit Charge in connection with Plaintiff's vehicle purchase so that Carvana could transfer the vehicle, and the charge was thus permitted as "necessary or incidental to the sale" of the motor vehicle, even assuming the charge was not already permitted by Section 6222(5)(i)(B).  *See id.*

Plaintiff's contention that Section 6242 requires the Court to conclude that the Transit Charge is not "necessary or incidental to the sale of a motor vehicle" under Section 6233(a) because it is not "related to requirements imposed by the government as a condition on the sale of a motor vehicle" is without merit.  *See* Compl. ¶¶ 22-23.  Section 6242 does not purport to define or limit the full scope of "charges necessary or incidental to the sale of the motor vehicle" that a seller may "directly or indirectly charge, contract for, collect or receive from the buyer" under

---

[5] As further evidence that the CCC contemplates the delivery and transfer of motor vehicles, the same section also permits "[o]ther charges normally included in the delivered purchase price of a motor vehicle."  12 Pa. C.S.A. § 6222(5)(i)(F).

Section 6233(a).  *See* 12 Pa. C.S.A. § 6233(a).  Section 6242 instead discusses a smaller subset of fees: Sections 6242(a) and (b) relate to fees that are "payable by buyer" to the government or for notarization, 12 Pa. C.S.A. § 6242(a), and those for which the buyer "voluntarily contracts," 12 Pa. C.S.A. § 6242(b).  And even within the subset of fees discussed in Section 6242, Section 6242 still broadly authorizes a seller to collect other necessary or incidental charges that are contracted for by the buyer.[6]  12 Pa. C.S.A. § 6242(f)(1).  Section 6242 thus does not limit the "necessary or incidental" charges allowed by Section 6233(a), much less the "[c]harges for delivery" permitted by Section 6222(5)(i)(B).  Plaintiff's flawed interpretation of Section 6242 would improperly create internal inconsistency and conflict across the provisions of the CCC and should be rejected. *See Trust Under Agreement of Taylor*, 164 A.3d 1147, 1157 (Pa. 2017) ("A fundamental principle in statutory construction is that we must read statutory sections harmoniously.").

In an effort to support her contention that Carvana could not charge a Transit Charge, Plaintiff also cites to a stipulated consent agreement and order between unrelated parties.  *See* Compl. ¶¶ 25-29 (describing a "Consent Agreement and Order" between "car dealership based on Homestead, Pennsylvania" and the Commonwealth of Pennsylvania); *id.*, Ex. C.  This consent agreement, however, has no precedential or persuasive weight.  Pennsylvania courts have long held that consent orders and decrees "can bind only parties," and "can bind only those parties who have agreed to the consent decree." *Antrim Min., Inc. v. Davis*, 775 F. Supp. 165, 168 (M.D. Pa. 1991) (citing *Firefighters v. Cleveland*, 478 U.S. 501, 529 (1986)); *see also, e.g.*, *City of Chester v. Pub. Util. Comm'n*, 773 A.2d 1280, 1286 (Pa. Commw. Ct. 2001) (to defer to a consent decree

---

[6] Section 6242(f)(1) contains limited exceptions that are undisputedly not applicable here. Specifically, an installment contract can include "incidental" charges contracted for by the buyer so long as: (i) they do not relate to the revocation or suspension of a license, and (ii) the charge is not otherwise restricted (including under Section 6242(f)(2)).  12 Pa. C.S.A. § 6242(f)(1).

between non-parties would "violat[e] the due process rights of those who were not a party to that settlement"); *City of Philadelphia v. Pennsylvania Pub. Util. Comm'n*, 676 A.2d 1298, 1307 n.16 (Pa. Commw. Ct. 1996) (relying on consent decree "deprives [non-]parties of their due process right to a full and fair hearing," and thus court was "not bound by the consent decree"). Carvana is not a party to the consent agreement and order and is not bound by it. Plaintiff's reliance on the consent agreement conflicts with the plain language of the CCC, which is controlling, and should be ignored. *See* disc. *supra* at 14-15; *Davis*, 775 F. Supp. at 168.

Carvana's actions in charging and itemizing the Transit Charge in the RISC are not only consistent with the express language of the CCC but also with the statute's overall purpose. The statute "was designed to address usurious fees and improper conduct that occurred in the financing of an automobile," but it "does not place any constraints or limitations on the profit earned from the sale of a motor vehicle and any accessories or purchaser options that may be included or negotiated with the sale." *Homziak*, 839 A.2d at 1082. Carvana acted properly and consistent with the CCC in disclosing the exact amount that Plaintiff was required to pay for having her vehicle delivered to her residence. Carvana is permitted to negotiate with its customers, including Plaintiff, additional "purchaser options"—like delivery and transit—as part of the sale of a motor vehicle. Because the CCC permits charging a fee for delivery and transit of a vehicle, the Complaint should be dismissed with prejudice.

### B.     Plaintiff's Unjust Enrichment Claim Fails Because The Parties' Relationship Is Governed By An Express Contract

Plaintiff's claim for unjust enrichment independently fails for two additional reasons. First, the claim is "inapplicable" where, as here, "the relationship between the parties is founded on a written agreement or express contract." *Wilson Area Sch. Dist. v. Skepton*, 895 A.2d 513, 520 (Pa. 2006). An unjust enrichment claim seeks to enforce a "quasi-contract" or a contract implied in

law. *Id*. at 521. As a result, "[d]ismissal of an unjust enrichment claim is appropriate upon a motion to dismiss when the relationship between the parties is founded on a written instrument." *Philadelphia Hous. Auth. v. CedarCrestone, Inc.*, 562 F Supp. 2d 653, 655 (E.D. Pa. 2008). That is precisely the case here. Plaintiff alleges that her relationship with Carvana is governed by an express contract. Compl. ¶¶ 32, 35. Plaintiff's claim for unjust enrichment hinges on the allegation that she was improperly charged a delivery fee, or a "Transit Charge," in the RISC connection with the purchase of her vehicle. *See id*. ¶¶ 32, 38. Plaintiff alleges that the RISC is a written agreement between Plaintiff and Carvana. *Id*. ¶ 32(c). Plaintiff's relationship with Carvana is founded on a written contract, and her unjust enrichment claim should thus be dismissed. *See CedarCrestone, Inc.*, 562 F Supp. 2d at 655.

Second, Plaintiff is required to allege that Carvana retained a benefit under circumstances in which it was unjust to do so. *See Walter v. Magee-Womens Hosp. of UPMC Health Sys.*, 876 A.2d 400, 407 (Pa. Super. 2005). But here, Plaintiff alleges that she was charged a "delivery fee" "for delivering the Vehicle to [her] home" and that Carvana in fact "delivered the Vehicle to [her] residence in Pennsylvania." Compl. ¶¶ 34, 38. Plaintiff alleges, in other words, that she received exactly what she paid for. *See id.* According to the Complaint, Carvana provided the agreed-upon service and has not been unjustly enriched, and the unjust enrichment claim should be denied. *See Walter*, 876 A.2d at 407 (dismissing claim and finding that "appellants received the services for which they bargained").

### C. Plaintiff's UTPCPL Claims Should Be Dismissed For Failure To State A Claim

Plaintiff also fails to state a claim under the UTPCPL for at least two additional reasons. First, Plaintiff fails to allege a deceptive act that is likely to deceive a consumer acting reasonably under the circumstances. *Velazquez v. State Farm Fire & Cas. Co.*, 2020 WL 1942784, at *3

(E.D. Pa.  Mar. 27, 2020); *see also Kemezis v. Matthews*, 394 F. App'x 956, 959 (3d Cir. 2010) (a

private plaintiff must allege sufficient "facts from which plausible inferences of deceptive conduct

and justifiable reliance thereon can be drawn").  Plaintiff seems to allege that Carvana violated the

UTPCPL by "charging and collecting the illegal delivery fee."  Compl. ¶ 40.  As discussed above,

however, the CCC allows a car seller like Carvana to charge a fee for delivery and transit.   *See*

*supra* 15-16.  The act of charging a fee that is permitted by law cannot and does not amount to a

deceptive act.  *Brogan v. Fred Beans Motors of Doylsetown, Inc.*, 2020 WL 1666464, at *13-14

(E.D. Pa. Apr. 3, 2020) (plaintiff's UTPCPL claim failed where he alleged that car dealer

unlawfully charged fee that was expressly permitted by law).

Second, Plaintiff's claim of deception seems to be that Carvana deceived Plaintiff by

charging a fee it lacked the legal authority to charge.  Plaintiff, in other words, alleges that Carvana

misstated the law, not the facts, and statements of law do not constitute actionable fraud.  *See*, *e.g.*,

*Wu v. Capital One, N.A.*, 2014 WL 3673041, at *7 (D.N.J. July 22, 2014); *see also, e.g.*, *Sosa v.*

*DIRECTV, Inc.*, 437 F.3d 923, 940 (9th Cir. 2006) ("misrepresentations of the law are not

actionable as fraud . . . because statements of the law are considered merely opinions and may not

be relied upon absent special circumstances not present here").  Plaintiff's UTPCPL claim should

therefore be dismissed.[7]  *See, e.g.*, *Velazquez*, 2020 WL 1942784.

## CONCLUSION

For the reasons set forth above, Carvana respectfully requests that the Court compel

arbitration on a non-class basis and dismiss or stay this case.  Alternatively, Carvana requests that

---

[7] Plaintiff admits that the charge was not factually incorrect or otherwise misleading.  *See* Compl.
¶ 32(c) (alleging that the RISC listed a $490.00 "Transit Charge"); *id*. ¶ 38 (alleging that the
$490.00 "Transit Charge" is the "delivery fee that Carvana charged Bradley").  *See Brogan*, 2020
WL 1666464, at *14 (manner in which car dealer included charge in RISC did not violate UTPCPL
because it was not hidden or preprinted).

the Court dismiss the Complaint with prejudice for failure to state a claim on which relief can be

granted.  Carvana further respectfully requests all such other relief as the Court deems appropriate.


Dated: August 29, 2022                              Respectfully submitted,

                                                    /s/ *Robert C. Collins III*
                                                    Robert C. Collins III, one of the Attorneys
                                                    for Carvana, LLC


Eric Leon (New York Bar No. 2626562) (Admitted *Pro Hac Vice*)
eric.leon@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020
Telephone: (212) 906-1200
Facsimile: (212) 751-4864


Robert C. Collins III (Illinois Bar No. 6304674) (Admitted *Pro Hac Vice*)
robert.collins@lw.com
LATHAM & WATKINS LLP
330 North Wabash Avenue, Suite 2800
Chicago, IL 60611
Telephone: (312) 876-7700
Facsimile: (312) 993-9767

Paul G. Gagne (Pennsylvania ID No. 42009)
pgagne@kleinbard.com
KLEINBARD LLC
Three Logan Square
Philadelphia, PA 19103
Telephone: (215) 523-5302