**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **TAJAE BRADLEY,** individually and as a representative of the Class,  ) ) | |
| ) | **Case No. 2:22-cv-02525-MMB** |
| **Plaintiff,**  ) | |
| ) | **CLASS ACTION** |
| **v.**  ) | |
| ) | **JURY TRIAL DEMANDED** |
| **CARVANA, LLC**  ) | |
| ) | |
| **Defendant.**  ) | |
| ) | |

**AMENDED CLASS ACTION COMPLAINT**

Tajae Bradley ("Plaintiff' or "Bradley") brings this class action against Carvana, LLC ("Defendant" or "Carvana") on behalf of herself and the Class set forth below.

**SUMMARY OF THE ACTION**

1.      This is a class action against the country's second largest used car dealership for charging illegal delivery fees to Pennsylvania consumers in violation of Pennsylvania's Consumer Credit Code ("CCC"), 12 Pa. C.S. §§ 6201 *et seq.* (formerly the Motor Vehicle Sales Finance Act ("MVSFA"), 69 P.S. §§ 601 *et seq.*).

2.      Bradley seeks to recover damages, attorneys' fees and costs, and all other available relief, individually and on behalf of the Class, under Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"), 73 P.S. §§ 201-1 – 201.9.2.

**PARTIES**

3.      Bradley is a natural person over the age of eighteen.

4.      Bradley resides in Philadelphia County, Pennsylvania.

5.      Carvana is a limited liability company headquartered in Tempe, Arizona.

1

6.      Carvana is "the second largest used automotive retailer in the U.S." and "the leading e-commerce platform for buying and selling used cars."[1]

7.      Carvana has generated $25.7 billion in used car sales since launching in 2013, including $9.9 billion in 2021.[2]

8.      Carvana is licensed under the CCC as an installment seller.

## BACKGROUND

9.      "[Carvana] sell[s] used vehicles directly to [its] customers through [its] website."[3]

10.     Since 2013, Carvana "purchased, reconditioned, sold, and delivered approximately 1 million vehicles to customers through [its] website[.]"[4]

11.     In addition to the revenue earned from used car sales, Carvana's "revenues include commissions on vehicle service contracts ("VSCs"), gains on the sales of finance receivables, GAP waiver coverage, interest income received on finance receivables prior to selling them to investors and delivery fee revenues charged to customers taking delivery of purchased used vehicles outside [Carvana's] free delivery area."[5]

12.     As of December 31, 2021, Carvana's "distribution network services cover 81.0% of the U.S. population[.]"[6]

---

[1]   Carvana Co. Annual Report (Form 10-K), at 6, 2 (Feb. 24, 2022), https://otp.tools.investis.com/clients/us/carvana/SEC/sec-show.aspx?Type=html&FilingId=15600155&CIK=0001690820&Index=10000 ("2022 Form 10-K").

[2] 2022 Form 10-K at 2, 54.

[3] 2022 Form 10-K at 68.

[4] 2022 Form 10-K at 2.

[5]   Carvana Co. Prospectus Filed Pursuant to Rule 424(b)(4), at F-13 (Apr. 27, 2018), https://otp.tools.investis.com/clients/us/carvana/SEC/sec-show.aspx?Type=html&FilingId=12710406&CIK=0001690820&Index=10000.

[6] 2022 Form 10-K at 2.

**FACTUAL ALLEGATIONS RELATING TO PLAINTIFF**

13.     On or about April 22, 2021, Carvana sold Bradley a used 2014 Kia Sportage with an odometer reading of more than 90,000 miles (the "Vehicle").

14.     Bradley purchased the Vehicle primarily for personal, family, and/or household purposes.

15.     Bradley and Carvana executed a written Retail Installment Contract and Security Agreement ("RISC") (attached hereto as Exhibit A).

16.     The RISC does not include a forced arbitration clause.

17.     Carvana delivered the Vehicle to Bradley's residence in Pennsylvania.

18.     At the time of delivery, Bradley signed various sales and delivery documents for the transaction, including a standalone document entitled "Arbitration Agreement" (attached hereto as Exhibit B).

19.     The Arbitration Agreement is void and unenforceable under the CCC because the statute requires the RISC to contain all the agreements between a buyer and a seller relating to an installment sale of a motor vehicle. 12 Pa. C.S. § 6221(a).

20.     The Pennsylvania Superior Court agrees. *Knight v. Springfield Hyundai*, 81 A.3d 940, 948-49 (Pa. Super. 2013); *Zentner v. Brenner Car Credit, LLC*, No. 751 MDA 2021, 2022 Pa. Super. Unpub. LEXIS 362, at *5-12 (Pa. Super. Feb. 8, 2022); *Walker v. Metro Auto Sales, Inc.*, No. 254 EDA 2013, 2014 Pa. Super. Unpub. LEXIS 1289, at *4-7 (Pa. Super. Apr. 7, 2014).

21.     The Eastern District of Pennsylvania agrees as well. *Gregory v. Metro Auto Sales, Inc.*, 158 F. Supp. 3d 302, 305 (E.D. Pa. 2016); *Jennings v. Carvana LLC*, No. 21-cv-05400, 2022 U.S. Dist. LEXIS 178402, at *11-20 (E.D. Pa. Sept. 30, 2022); *Mount v. Peruzzi of Langhorne LLC*, No. 21-cv-02166, 2021 U.S. Dist. LEXIS 157579, at *5-6 (E.D. Pa. Aug. 20, 2021); *Guia v.*

*World CDJR LLC*, No. 18-cv-04294, 2019 U.S. Dist. LEXIS 66271, at *11 (E.D. Pa. Apr. 17, 2019); *Earley v. JMK Assocs.*, No. 18-cv-00760, 2018 U.S. Dist. LEXIS 202916, at *2-3 (E.D. Pa. Sept. 5, 2018).

22.     The CCC requires disclosure of the "purchase price" of a motor vehicle. 12 Pa. C.S. § 6222(5)(i).

23.     This disclosure requires any "[c]harges for delivery" to be included in the purchase price of a motor vehicle. *Id.* § 6222(5)(i)(B).

24.     The purpose of this disclosure is to ensure that consumers know the true price of a motor vehicle so they can make informed purchasing decisions.

25.     Because accurate disclosures are essential to allow consumers to make informed purchasing decisions, if a charge or fee is not disclosed as required by 12 Pa. C.S. § 6222(5), it cannot be charged, collected, contracted for, or received. 12 Pa. C.S. § 6233(a) (emphasis added) ("[A] licensee may directly or indirectly charge, contract for, collect or receive from the buyer, in connection with the retail sale of a motor vehicle under an installment sale contract, insurance charges, other charges necessary or incidental to the sale of the motor vehicle, finance charges, refinance charges, late charges, recording and satisfaction fees, court costs, attorney fees and costs of retaking, repairing and storing a repossessed motor vehicle, *which are disclosed as required by section 6222(5)* (relating to contents).").

26.     The RISC represents that the total cash price of the Vehicle was $16,137.80.

27.     On top of the Vehicle's total cash price, the RISC adds a separate $490.00 "Transit Charge," which is disclosed separate from the Vehicle's cash price.

28.     To the extent Carvana's "Transit Charge" is even permitted, Carvana cannot charge or collect the $490.00 "Transit Charge" because Carvana failed to disclose the "Transit Charge"

consistent with 12 Pa. C.S. § 6222(5), thereby allowing Carvana to advertise the Vehicle at a false price lower than the Vehicle's true cost to Bradley.[7]

29.     Carvana's improper disclosure of "Transit Charges" deceives consumers as to the true cash price of the vehicles Carvana sells.

30.     Carvana's improper disclosure also deceives consumers into believing that Carvana can collect "Transit Charges."

31.     As a matter of policy or practice, Carvana regularly charges and collects delivery fees to Pennsylvanians, despite failing to disclose the fees in a vehicle's purchase price.

32.     This allows Carvana to artificially lower the purchase price of its motor vehicles and prevents consumers from making informed purchasing decisions.

33.     The Federal Trade Commission has recognized this practice, known as drip pricing, "is used by many types of firms, including internet sellers, automobile dealers, financial institutions, and rental car companies"[8] and "may violate the law by misrepresenting the price consumers can expect to pay[.]"[9]

---

[7] Bradley continues to maintain that the "Transit Charge" is unlawful. *See* 12 Pa. C.S. § 6233(b); *see also* Consent Agreement and Order, *Pa. Dep't of Banking & Sec. v. High Level Auto*, No. 21-0073 (Sept. 20, 2021), https://www.dobs.pa.gov/Documents/Enforcement%20Orders/2021/092021%20High%20Level%20Auto%20CAO_Redacted.pdf (taking action against car dealership for charging delivery fees).

[8] *The Economics of Drip Pricing*, FTC.gov, https://www.ftc.gov/news-events/events/2012/05/economics-drip-pricing (last visited Oct. 18, 2022); *see also* Amelia Fletcher, Chief Economist, U.K. Office of Fair Trading, *Drip Pricing: UK Experience* (May 21, 2012), pp. 8-9, https://www.ftc.gov/sites/default/files/documents/public_events/economics-drip-pricing/afletcher.pdf.

[9] Letter from Mary K. Engle, Assoc. Dir. for Advert. Practices, to Gen. Manager of Aston Kaanapali Shores, pp. 1-2 (Apr. 11, 2013), https://www.ftc.gov/system/files/documents/foia_requests/2016-01006_warning_letters_49_pgs.pdf.

34.     As a result of this conduct, Bradley and many Pennsylvanians lost money and paid delivery fees that Carvana cannot charge, collect, contract for, or receive.

## CLASS ACTION ALLEGATIONS

35.     Bradley brings this action individually and on behalf of all others similarly situated under Rules 1702, 1708, and 1709 of the Pennsylvania Rules of Civil Procedure.

36.     Bradley seeks to certify the following Class: "All persons who purchased a motor vehicle from Carvana, arranged for delivery of the motor vehicle into Pennsylvania, were charged an amount purporting to represent a delivery fee or "Transit Charge" within the applicable statute of limitations, and did not have that charge disclosed in their RISC as part of the purchase price or total cash price of their motor vehicle."

37.     Bradley reserves the right to expand, narrow, or otherwise modify the class as the litigation continues and discovery proceeds.

38.     Pa. R. Civ. P. 1702(1), 1708(a)(2): The class is so numerous that joinder of the class members is impracticable. There likely are hundreds of members of the class. Since each of the claims of the class members is substantially identical, and the class members request substantially similar relief, centralizing the class members' claims in a single proceeding is the most manageable litigation method available.

39.     Pa. R. Civ. P. 1702(2), 1708(a)(1): Bradley and the class members share numerous common questions of law and fact that will drive the resolution of the litigation and predominate over any individual issues. For example, there is a single common answer to the question of whether Carvana could charge, collect, contract for, or receive delivery fees, "Transit Charges," or similar fees, despite not disclosing those charges as part of the purchase price or total cash price

of a motor vehicle. This question, and other common questions of law and fact, predominate over any individual issues.

40.     Pa. R. Civ. P. 1702(3): Bradley's claims are typical of the claims of the class because the claims of Bradley and the class are based on the same legal theories and arise from the same conduct.

41.     Pa. R. Civ. P. 1702(4), 1709: Bradley is an adequate representative of the class because the interests of Bradley and the class members align. Bradley will fairly, adequately, and vigorously represent and protect the interests of the class and has no interest antagonistic to the class. Bradley retained counsel who are competent and experienced in the prosecution of class action litigation generally and consumer finance litigation specifically.

42.     Pa. R. Civ. P. 1708(a)(3), (6), (7): Given the complexity and nature of the issues presented and the relief requested, the expense and time necessary to obtain such relief, and the anticipated recovery and relief Bradley and the class members may obtain, the class action mechanism is by far the preferred and most efficient litigation mechanism to adjudicate the claims of Bradley and the class members. Additionally, requiring Bradley and the class members to file individual actions would impose a crushing burden on the court system and almost certainly lead to inconsistent judgments. Class treatment presents far fewer management difficulties and provides benefits of a single adjudication and economies of scale.

43.     Pa. R. Civ. P. 1708(a)(4): Based on the knowledge of Bradley and undersigned counsel, there are no cases currently pending that address the issues or request relief for the conduct at issue in this case.

44.     Pa. R. Civ. P. 1708(a)(5): This forum is appropriate for this litigation, as Carvana regularly conducts business in this County and part of the claims arose in this County.

## COUNT I
### Violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law
### 73 P.S. §§ 201-1 *et seq.*
### *On behalf of Bradley and the Class*

45.     Bradley and Carvana are "persons" under 73 P.S. § 201-2(2).

46.     Bradley and the Class purchased goods and services in "trade" and "commerce" under 73 P.S. § 201-2(3).

47.     Bradley and the Class purchased goods and services primarily for personal, family, and/or household purposes under 73 P.S. § 201-9.2.

48.     Carvana engaged in "unfair methods of competition" or "unfair or deceptive acts or practices" under 73 P.S. § 201-2(4) by engaging in fraudulent or deceptive conduct which created a likelihood of confusion or misunderstanding. 73 P.S. § 201-2(4)(xxi).

49.     These unfair methods of competition and unfair or deceptive acts or practices are declared unlawful by 73 P.S. § 201-3.

50.     Bradley and the Class lost money or property as a result of Carvana's unlawful conduct and, therefore, are entitled to actual damages, statutory damages, treble damages, and all other available relief under 73 P.S. § 201-9.2, as well as reasonable costs and attorneys' fees, and such additional relief the Court deems necessary and proper.

### JURY TRIAL DEMANDED

Bradley requests a jury trial on all claims so triable.

### PRAYER FOR RELIEF

WHEREFORE, Bradley, on behalf of all others similarly situated, requests that the Court enter judgment against Carvana, including an order:

A.     Determining that this matter may proceed as a class action and certifying the Class asserted herein;

8

B.      Appointing Bradley as representative of the Class and appointing Bradley's counsel as class counsel;

C.      Declaring Carvana's conduct unlawful;

D.      Awarding Bradley and the Class members actual, compensatory, consequential, statutory, treble, and all other damages available under the law;

E.      Awarding attorneys' fees, costs, and expenses, as provided by law or equity;

F.      Awarding pre-judgment and post-judgment interest, as provided by law or equity; and

G.      Awarding all other relief that is just, equitable, and appropriate, or as the Court may allow.

Respectfully submitted,

Dated: October 21, 2022            */s/ Kevin J. Abramowicz*

Kevin J. Abramowicz (He/Him) (PA 320659)
Kevin W. Tucker (He/Him) (PA 312144)
Chandler Steiger (She/Her) (PA 328891)
Stephanie Moore (She/Her) (PA 329447)
**EAST END TRIAL GROUP LLC**
6901 Lynn Way, Suite 215
Pittsburgh, PA 15208
Tel. (412) 877-5220
Fax. (412) 626-7101
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
csteiger@eastendtrialgroup.com
smoore@eastendtrialgroup.com

9